JONES vs. PAUL, ET AL.

Jones filed his bill in equity, in which he charged that he had purchased a tract of land, at a sale made under an execution, issued by the clerk of the circuit court, upon a transcript of a judgment of a justice of the peace.   That the defendant in the execution had conveyed the land to one Marshall.   That the deed to Marshall was fraudulent and void as to creditors.   And was, though absolute upon its face, in fact a mortgage.   It prayed,

First.  To have the deed set aside.

Second.  To compel the mortgagee to account, and that complainant be permitted to redeem.

Held,

1. That the bill was multifarious, and that a demurrer would lie.

2. That the question as to the validity of the judgment under which the land was sold—the return of the execution issued to the constable—the validity of the execution issued by the clerk—or the deed made by the sheriff, although made a part of bill, could not come up on demurrer ; but must be decided by the circuit court when offered in evidence.

ERROR to Platte.

ISAAC N. JONES, for the Plaintiff in error.

STRINGFELLOW, for Defendants in error.

POINTS AND AUTHORITIES.

1. The bill charges that the deed from Paul to Marshall is fraudulent and void, and at the same time admits it to be a mortgage, and prays to redeem.

2. It does not show any title in complainant: 1st. The sheriff's deed is insufficient in not showing that the property was advertised for sale according to law, or that it was sold according to law.   See Stat. 1835 p. 258, §38-'9-45.   2d. The judgment rendered by the justice is void,

there being no service of process. Stat. 35—title Justice's Courts. 3d. There was no execution returned according to law, by the constable. It was returned on the day it was issued—and was not returned that "defendant had no goods or chattels whereof to levy the same"—but "that no property belonging to defendant was found in the township." Stat. p. 364, § 19. 4th. The execution issued to the constable did not correspond with the judgment. 5th. There is no exhibit filed and referred to, showing that the copy of the judgment had ever been filed with the clerk. 6th. The execution issued by the clerk was not issued upon the transcript of the judgment filed in his office, but upon a transcript of a different judgment and for costs incurred after filing the copy of the judgment.

3. The bill is multifarious. In one part it prays an account of the rents and profits of the mortgaged premises, a conveyance of title from Marshall, and a foreclosure of the equity of redemption of Paul. And in another, an account of money not alleged to have been received on, or to be applied to discharge a mortgage.

4. The bill is not to redeem but to foreclose, and shows no right in plaintiff.

McBRIDE, J., delivered the opinion of the court.

The complainant filed his bill on the chancery side of the Platte circuit court, on the 26th August, 1844, against the defendants.

The bill states that Samuel Paul, and Elmira Paul, his wife, on the 14th July, 1842, conveyed by deed to Frederick Marshall lot number 2, in block numbered 31, in Platte City, for the consideration of $110, as expressed in the deed. On the 10th October, 1843, the complainant obtained before a justice of the peace in Platte county, a judgment against the defendant Paul, for about $87, debt, interest and costs, upon which execution issued, which was returned instanter, "No property found of the defendant in my township whereon to levy this execution, 13th Nov. 1843." On the 11th October, 1843, the complainant obtained a transcript of his judgment, and filed the same in the office of the clerk of the circuit court of Platte county, upon which an execution was issued by the clerk on the 13th November following, which was by the sheriff levied on the lot conveyed by Paul and wife to Marshall, and the lot sold by virtue thereof on the 9th April, 1844, when the complainant became the purchaser at the sum of $5, and received the sheriff's deed therefor.

The bill further states that the lot and improvements thereon were

worth at the time of the conveyance from Paul and wife to Marshall, the sum of $400, and the yearly rent about $80; that the deed although absolute on its face, was only intended as a mortgage to secure a debt due from Paul to Marshall of $110. The bill then proceeds, "your orator further charges that Paul and wife conveyed said lot to said Marshall to defraud, hinder and delay the creditors of said Paul—said Paul being at that time insolvent, and having no other property subject to execution." Since the 14th July, 1842, Paul assigned to Marshall a claim he held against Platte county, amounting to $400, to protect the same from the payment of his debts, and since the transfer, Marshall has received a large amount of said claim—that complainant notified Marshall of his claim against Paul, and requested him to retain in his hands an amount sufficient to pay complainant's debt. The complainant has proffered to pay Marshall the balance due him from Paul, after deducting the payments made by Paul, the rents and profits of the house and lot, and the usury charged in the transaction, should there be any balance, and concludes by propounding a number of interrogatories to the defendants, with a prayer for the foreclosure of the mortgage, the setting aside the deed for fraud, and for general relief.

To the bill, the defendants filed their joint and several answer, to which the complainant filed his exceptions. Afterwards by agreement the answer was withdrawn, and the defendants filed a general demurrer assigning special causes to the bill ; whereupon the complainant obtained leave to amend his bill ; the amendments sets out more fully the exhibits referred to in the bill and makes them a part thereof, and concludes by reiterating substantially the interrogatories put by the bill. The defendants again demurred, which being sustained by the court, and the bill dismissed, the complainant has brought his case in this court by writ of error.

The counsel on both sides have presented many points which cannot legitimately arise on the demurrer, and which this court will not now examine in detail. Whether the judgment of the justice of the peace is regular—whether the return of the constable on the execution, is sufficient in law—within what time the constable may make his return so as to authorize the clerk to issue an execution from his office on the transcript—and whether the deed of the sheriff contains all the recitals required by our statute, are questions which will more properly arise on the trial and must first be presented to and decided by the circuit court, before this court can entertain them. For those questions to be decided on demurrer would be almost equivalent to a trial of the cause upon its merits.

The bill first charges the defendants, Paul and wife, with having executed a deed of conveyance to their co-defendant Marshall, which although unconditional on its face, was intended by the parties thereto as a mortgage to secure the sum of $110, due from Paul to Marshall. Pursuing this view of the transaction, until complainant obtains his judgment, files his transcript, and has an execution issued which will reach the real estate of Paul, the complainant then abandons the idea of a mortgage, and charges that the deed was made in fraud, to hinder and delay the creditors of Paul. In confirmation of this latter charge, the bills alleges that since the conveyance of the lot, Paul has assigned to Marshall a demand of some character or description, which he had against the county of Platte, amounting to about $400, to prevent his creditors from getting it, and that Marshall having received a large amount of that fund, refuses to render him an account thereof.

As an excuse for thus blending in one bill two distinct causes of action, the complainant urges that not knowing precisely the character of the transaction, which he calls upon the chancellor to unravel for him he has been driven from necessity to present his bill with a double aspect.

This court cannot recognize any such necessity, but holds it to be the duty of the complainant to ascertain his rights, and the means adopted by others to defeat or withold from him the exercise and enjoyment thereof before he applies to a court of equity for relief. Then he will be able to present his case with clearness and brevity. If he does not know what are his rights, how is he prepared to say that his rights have been violated ? Shall the mere vague belief or suspicion of a complianant, that he has been defrauded or wronged in one of two modes, be the basis of the action of a court of chancery ?

The bill in chancery answers to the declaration in a suit at common law; as at common law, so likewise is it desirable in chancery, that the matters in controversy shall be narrowed down to as few issues as practicable. This rule is not only beneficial to parties litigant, who thereby have an additional guarantee that justice will be afforded, but likewise due to the courts as it tends to divest causes of much of their complication and embarrassment. The rule should not be lost sight of in endeavoring to carry out another favorite object of a court of equity, the prevention of a multiplicity of suits.

In Mitford's Chy. Pl. 181, it is laid down as a general principle that the court will not permit the plaintiff to demand by one bill, several matters of different natures against several defendants, and the reason assigned is that it would tend to load each defendant with an unneces-

sary burden of costs, by swelling the pleadings with the state of the several claims of the other defendants, with which he has no connexion. The same principle is recognized in the case of Fellows vs. Fellows, 4 Cowen, 700; 2 Madd. Ch. 294; 2 Har. Ch. Pr. 289; 1 East 227.

In the case of Gaines, et ux. vs. Chew, et al., 2 Howard 642, the court say "that a bill which is multifarious may be demurred to for that cause, is a general principle, but what shall constitute multifariousness is a matter about which there is a great diversity of opinion. In general terms a bill is said to be multifarious which seeks to enforce against different individuals, demands which are wholly disconnected. In quoting from the case of Campbell vs. Mackay, 7 Simon 564, when it is said that " to lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition, is, upon the authorities, utterly impossible." The judge then proceeds to declare that " every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject."

The two grounds of relief sought for in this bill, are wholly dissimilar and disconnected. If, as first charged in the bill, the deed is a mortgage, then the defendants should not be forced to prepare themselves to defend against the charge of fraud. And if the transaction be a fraudulent one, there will be no necessity of inquiring whether the deed, absolute on its face was intended by the parties to be a mortgage. Which question shall the court investigate? Or shall the investigation of both proceed at the same time? If so, the proceedings are not only rendered embarrassing and complicated, but the defendants if acquitted of fraud, will be subjected to greater inconvenience and cost than they should be, and for what reason? Not perhaps in consequence of any wrong committed by them, but because the complainant has not taken the trouble to inform himself correctly as to his rights.

In the exercise of a sound discretion, therefore, the court might very properly require the complainant to elect upon which charge in the bill he will base his claim for relief at the hands of the chancellor, and to frame his bill accordingly. For whilst the door of the courts of chancery are always open, and the courts are ever ready to grant relief to those who are aggrieved and who seek her aid, because an adequate remedy cannot be obtained at law, they will also bear in mind that defendants likewise have rights which it is equally their duty to protect.

We are therefore of opinion that the circuit court committed no error in sustaining the demurrer to the bill.

The effect of the judgment of the court in dismissing the bill, will be

to require the complainant, if he desire further to prosecute the matter, to file a new bill, and will not operate as the complainant appears to apprehend as a bar to a future action. Where a suit is dismissed upon a hearing upon the merits, it is ordinarily, unless the dismissal is without prejudice, a bar to another bill; whereas if the bill is dismissed for defect of form or structure, not going to the merits, it is no bar to a future suit for the same subject matter. See Story's Equity 359 ; 2 Madd. Ch. Pr. 248 ; 7 John. Chy. R. 286 ; Mitford Eq. Pl. 216.

The other members of the court concurring herein, the judgment of the circuit court is affirmed.