WILLIAM J. SCOTT, Appellant, v. FRANCES TAYLOR and F. G. ALTMAN et al.

Division One, December 23, 1910.

1. PLEADING: Duplicity. A petition which unites in one count several distinct, independent and unconnected matters, is duplicitous, or multifarious, which means the same thing; for instance, a petition which joins matters *ex contractu* and *ex delicto* in the same count should be stricken out as in violation of the statute against duplicity (Sec. 613, R. S. 1899).

2. ————: ————: Redeeming Under Mortgage: Attorney's Fees: Conversion: Accounting. A petition which in one count asserts plaintiff's right to redeem under a deed of trust, after foreclosure and purchase by the defendant mortgagee, and also demands judgment for attorney's fees for services rendered by plaintiff to the same mortgagee, both of which allegations state rights arising out of contract; and which also charges the conversion by said mortgagee of diamonds deposited with him, and the fraudulent conveyance by the mortgagee of the property covered by said deed of trust, to other defendants with knowledge, which are matters *ex delicto*, is duplicitous, and should be stricken out, although all these things seem to be brought in as parts of a bill for an accounting.

3. ———: ———: **Amendment: Duplicate.** Where plaintiff's petition is adjudged duplicitous and he is given leave to file an amended petition, but instead of doing so files a duplicate of the one stricken out, the court should strike this last from the files, and enter judgment·for defendant.

4. **APPEAL FROM RULING ON MOTION: Several Grounds: Presumption.** Where two or more grounds are assigned in a motion for striking out a petition, and the motion is sustained, with no designation of the ground on which the ruling is based, it will not be presumed on appeal that the court sustained both grounds. [Separate Concurring Opinion by GRAVES, J., in which majority concur.]

5. **PREJUDICE OF JUDGE: Power to Pass on Motions: Change of Venue.** The fact that a judge declares himself prejudiced against a litigant does not of itself, in the absence of an application for a change of venue, absolutely disqualify him to pass upon a motion attacking the sufficiency of such litigant's pleading.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Wm. J. Scott pro se.*

*Grant I. Rosenzweig* for respondents.

WOODSON, J.—The plaintiff prosecutes this appeal from an order and judgment of the circuit court of Jackson county, striking out three petitions filed in the cause by him in compliance with sections 613 and 623, Revised Statutes 1899, and without prejudice dismissing plaintiff's case.

Formal parts omitted, the original petition stricken out reads as follows:

"Now comes plaintiff herein and for his cause of action against defendant says:

"*First.* That on or about the first day of June, 1893, plaintiff was indebted to one William H. McLellan in the sum of two thousand seven hundred and

fifty dollars on a certain promissory note, dated the 5th day of May, 1888, and bearing interest at ten per cent per annum on its face, and secured by a deed of trust of even date, recorded in the office of the Recorder of Deeds of Jackson county, Missouri, on the 5th day of May, 1888, in Book B-307, page 356, on the following described real estate situate, lying and being in the county of Jackson and State of Missouri, to-wit:

"Commencing at a point two hundred and sixty-eight and five-tenths feet east and two hundred and twenty-five feet south of the northwest corner of a certain six and one-half acre tract of land in the northwest quarter of section ten, township forty-nine, range thirty-three, conveyed by Cynthia M. Clasby and husband to William J. Scott by deed dated April 10, 1882, and recorded in the Recorder's office of Jackson county, Missouri, at Kansas City, in Book B-75, page 147, thence south seventy-five feet on the line of and parallel with the west line of Chestnut avenue as established by an ordinance of the City of Kansas thence west one hundred and thirty-three feet to a point, thence north and parallel with the aforesaid line running south seventy-five feet, thence east and parallel with the aforesaid line running west one hundred and thirty-three feet to the place of beginning.

"That in consideration of the fact that property and real estate had greatly depreciated in value about the first day of June, 1893, and that plaintiff had paid the said William H. McLellan large sums in interest upon the note secured by deed of trust upon the property aforesaid, said McLellan about said date offered to turn over the note and security aforesaid to plaintiff upon the receipt of the sum of one thousand dollars; that plaintiff thereupon procured defendant F. G. Altman to advance the one thousand dollars for him and to take over the note and security aforesaid upon the following terms and conditions then and there agreed upon between them, namely: That said F. G. Altman

should advance plaintiff the one thousand dollars necessary to take up the note and mortgage of McLellan which were to be held by said Altman as security for such advances and other expenses incurred by him in protecting the property; that as soon as the property had recovered from the depression and panic then existing, if plaintiff had not repaid to said Altman the aforesaid one thousand dollars with eight per cent interest and all taxes paid by him, the property should be sold when the market price was mutually satisfactory and from the proceeds of the sale said F. G. Altman should first receive the one thousand dollars advanced and expenses incurred in connection with said property, together with interest at eight per cent per annum upon the entire sum from the dates of the payment thereof.

"*Second.* From the remaining proceeds of sale one-half or as much of said half as may be necessary was to be applied to the payment of any amount which might then be due from plaintiff to said F. G. Altman upon other accounts. All the balance remaining to be the property of plaintiff.

"But shortly after said date said Frank G. Altman attempted to advertise and sell the property aforesaid under the deed of trust aforesaid and a trustee's deed purporting to convey the property above described was made on the 23d day of September, A. D. 1893, recorded in Book B-543, page 418, in the office of the Recorder of Deeds of Jackson county, Missouri, at Kansas City.

"That the said trustee's deed executed in pursuance of such attempted sale by said trustee and the affidavit of publication attached thereto and made a part thereof shows on its face that the notice required by the trust deed aforesaid to be published for thirty days in a newspaper printed and published in the City of Kansas, was published for twenty-three days and

no more, and by reason thereof said sale and trustee's deed are wholly without force and effect to convey the equitable title to said property to defendant F. G. Altman, or bar the plaintiff's equity of redemption in and to the property above described.

"That plaintiff has for eight years last past urged defendant F. G. Altman on many occasions to furnish plaintiff an accounting of the amount paid out by him, together with the amount of taxes and other expenses incurred by him, in and about the preservation of the aforesaid property, but that defendant F. G. Altman though frequently promising to do so has wholly failed and refused to furnish any such statement. That plaintiff does not know and has no means of knowing what the amounts of said disbursements are, and said F. G. Altman refuses to cancel said note or satisfy said deed of trust, although plaintiff has long since paid the same and performed all the conditions required by said deed of trust, and said Altman refuses to convey said property to plaintiff although requested to do so.

"Plaintiff further states that there has been a running account between him and defendant F. G. Altman, and that the same has been running over several years, that he believes and charges the facts to be that upon a settlement of said account a large balance would be found in his favor.

"Wherefore, plaintiff hereby prays an accounting and hereby tenders to defendant F. G. Altman the amount, if any, that may be found due him upon the full accounting of the amount due and owing by plaintiff after allowing all just credits and offsets.

"Wherefore, plaintiff prays enforcement of his equity of redemption that said notes and deed of trust be extinguished and satisfied and that the legal and equitable title to the property above described be vested in him and for such other and further relief as to equity may appear just and proper.

"That defendant F. G. Altman, on the 22d day of

January, 1901, made, executed and delivered a certain promissory note for six thousand dollars with interest at six per cent per annum to Frances Taylor, and secured the same by deed of trust upon the property above described to Grant I. Rosenzweig, trustee for said Frances Taylor; that subsequently thereto and on the 22nd day of April, 1903, defendant F. G. Altman made, executed and delivered a certain promissory note to Rose Altman for the sum of five thousand dollars and interest at six per cent per annum, secured by deed of trust on the property above described and other property, to Grant I. Rosenzweig, trustee for said Rose Altman; that said deeds of trust were made and taken with due notice to all parties thereto of plaintiff's equity of redemption in said property above described.

"Wherefore, plaintiff prays that said deeds of trust be set aside, cancelled and held for naught as against said property.

"That plaintiff deposited with said F. G. Altman, defendant, diamonds that value two thousand two hundred dollars, which said Altman still retains or has converted to his own use.

"That defendant F. G. Altman is indebted to plaintiff in the sum of four thousand three hundred dollars for legal services rendered at his special instance and request, all of which is now due and wholly unpaid and which sum said services are reasonably worth.

"Wherefore, plaintiff prays judgment for said sum of four thousand three hundred dollars with interest and costs.

"Wherefore, plaintiff prays the court to decree the title to the property heretofore described to be in plaintiff, subject to the payment of such sums, if any, as may have been advanced by Frank G. Altman in the payment of taxes and assessments upon said property; that said first described note and mortgage be declared paid and satisfied on the record; that the last

mentioned deeds of trust to Frances Taylor and Rose Altman be set aside as against said property; that an accounting be had to determine the accounts between plaintiff and defendant F. G. Altman, and of the diamonds as aforesaid deposited as security, and on all matters unsettled between them, and that upon such accounting a decree may be entered of such sum as may be found owing plaintiff and for his costs herein expended.''

Without burdening this statement with a copy of all the petitions filed, it will suffice to state that all of them were substantially and practically duplicates of the original, the one before set forth. All of the changes made in them were trivial and immaterial.

The first motion filed by defendants prayed the court to strike out the petition for the reason that it was duplicitous.

This motion was sustained, and plaintiff was granted leave to file an amended petition on or before September 1, 1904. On the last named date plaintiff filed his first amended petition, which was practically the same as the original. To this petition defendants filed a second motion to strike out. This petition and motion were not passed upon by the court, presumably for the reason that plaintiff abandoned the petition by filing his second amended petition on November 22, 1904, which was substantially the same as the first.

To this, the second amended petition, the defendants filed their third motion to strike out, which was as follows:

''Now come defendants and pray the court to strike out the plaintiff's second amended petition in this cause for the reason that upon July 9, 1904, the court struck out the plaintiff's original petition in this cause, because said original petition was duplicitous; upon July 13, 1904, the court allowed the plaintiff until on or before September 1, 1904, in which to file an amended petition, all the said proceedings being at the

April term, 1904, of this court; that the plaintiff did not
file any amended petition within the time allowed by
the court as aforesaid nor at any other time,but did file
a petition upon September 1, 1904, which the plaintiff
styles a first amended petition, which first amended pe-
tition did not vary in any substantial manner from the
first petition stricken out by the court, but on the con-
trary, was substantially a duplicate of the original pe-
tition and was in itself duplicitous; that the said April
term, 1904, of said court ended upon the 9th day of Oc-
tober, 1904, and the October term, 1904, of this court
began on the 10th of October 1904. That thereafter at
the said October term, the defendant filed motion to
strike out said first amended petition for the reasons
aforesaid. That thereafter at said October term, upon
November 22, 1904, the plaintiff abandoned the said
first amended petition by filing a second amended peti-
tion in this cause. And defendants state that said
first amended petition was in fact duplicitous and was
substantially a duplicate of the original petition, and
the filing of said first amended petition was not a com-
pliance with the court's order or permission to file an
amended petition; that the time for such filing (Sep-
tember 1, 1904) having expired at the April term afore-
said without substantial compliance by the plaintiff, the
plaintiff had no right to file a second amended petition
at the subsequent October term of said court; and the
defendants further state that said second amended pe-
tition is substantially a duplicate of the two prior pe-
titions and is itself duplicitous.

"Wherefore the defendants pray that all existing
petitions in this cause be stricken out and the case be
dismissed."

Thereafter, the motion to strike out the second
amended petition herein was by said court sustained,
to which ruling of the court plaintiff duly excepted.

On March 23, 1905, the plaintiff filed his third

amended petition, which was in all respects the same as the previous ones.

On March 28th of the same year the defendants filed their fourth motion to strike out this, the plaintiff's third amended petition. Said motion is as follows:

"Now come defendants and pray that the plaintiff's third amended petition in this cause be stricken out for the reason that the same is duplicitous, and for the further reason that the said third amended petition is substantially the same as two prior petitions, both of which have heretofore been stricken out for duplicity; and for the further reason that the said third amended petition does not comply with the order of the court heretofore made, in that the court heretofore gave plaintiff permission to file an amended petition which should obviate the objection of duplicity, whereas the said third amended petition does not obviate said objection, but on the contrary is itself duplicitous."

Thereafter, the motion to strike out the third amended petition herein was by the court sustained, to which ruling of the court plaintiff excepted and still excepts.

Thereafter, February 26, 1907, defendants filed herein motion for judgment herein, which said motion is in words and figures as follows:

"Now come defendants herein and pray for judgment in this cause for the reason that three petitions in this cause have been filed by plaintiff and have been adjudged insufficient, and have been stricken out by the court."

On March 2, 1907, said motion for judgment was by the court sustained, to which ruling of the court the plaintiff excepted. And it was further ordered by the court that this cause be dismissed without prejudice. To which ruling and order of the court the plaintiff duly excepted.

I. As previously stated, this is an appeal prosecuted by the appellant from an order and judgment of the circuit court of Jackson county, striking out three petitions filed in the cause, and dismissing the cause in accordance to the provisions of sections 613 and 623, Revised Statutes 1899. These sections read as follows:

"Sec. 613. Duplicity in pleading is a substantial objection, and any petition or other pleading found subject to such objection shall, on motion, be stricken out."

"Sec. 623. If a third petition, answer or reply be filed and adjudged insufficient as above, or the whole or some part thereof be stricken out, the party filing such pleading shall pay treble costs, and no further petition, answer or reply shall be filed, but judgment shall be rendered."

After a careful reading and comparison of the various petitions filed in this cause, there is no escape from the conclusion that each and all of them are practically duplicates of the original, which is set out *verbatim et literatim* in the statement of the case. That being true, it will only be necessary for us to pass in judgment upon the original petition filed in the cause; and what is said regarding it will apply with equal force to all of the subsequent ones filed herein.

The first motion prayed the court to strike out the petition for the reason that it was duplicitous in character, while the subsequent motions were not confined to the duplicitous character of the petitions, but also asked that they be stricken out for the additional reason that they were duplicates of the original and were not amended petitions within the meaning of the order of the court striking them out and ordering an amended petition to be filed. The record discloses the fact that all of these motions were sustained.

Upon that state of the record two questions are presented: First, were the petitions duplicitous, and

therefore obnoxious to the statutes before quoted; and, second, was the circuit court waranted under the law in striking out the amended petitions for the reason that each and all of them were duplicates of the original, which had been stricken out for duplicity?

Addressing ourselves to the first proposition before stated, it becomes necessary in the first instance to ascertain the meaning of the word "duplicity" as used in section 613, before mentioned. In the absence of a definition given by the Legislature, the words of a statute are to be interpreted according to their ordinary and common meaning and acceptation. [State ex rel. v. Shepherd, 218 Mo. 656.]

This court in discussing this statute has frequently used the words duplicity and multifariousness as synonymous terms. The meaning of the word "duplicity" as used in this statute has been many times defined by this court, and a few quotations from the adjudications thereof will clearly show the meaning of that word.

In Clark v. Covenant Mut. Life Ins. Co., 52 Mo. 272, l. c. 275, this court, in defining the word "multifariousness," said: "A bill is said to be multifarious when distinct and independent matters are improperly joined whereby they are confounded, as, the writing in one bill of several matters perfectly distinct and unconnected, against one defendant, or the demand of several matters, of a distinct and independent nature, against several defendants in the same bill."

In Jones v. Paul, 9 Mo. 293, l. c. 295, this court not only defines the word but clearly states its application in the following language:

"The bill first charges the defendants, Paul and wife, with having executed a deed of conveyance to their codefendant Marshall, which although unconditional on its face, was intended by the parties thereto as a mortgage to secure the sum of $110, due from Paul to Marshall. Pursuing this view of the transaction,

until complainant obtains his judgment, files his transcript, and has an execution issued which will reach the real estate of Paul, the complainant then abandons the idea of a mortgage, and charges that the deed was made in fraud, to hinder and delay the creditors of Paul. In confirmation of this latter charge, the bill alleges that since the conveyance of the lot, Paul has assigned to Marshall a demand of some character or description, which he had against the county of Platte, amounting to about four hundred dollars, to prevent his creditors from getting it, and that Marshall having received a large amount of that fund, refuses to render him an account thereof.

"As an excuse for thus blending in one bill two distinct causes of action, the complainant urges that not knowing precisely the character of the transaction, which he calls upon the chancellor to unravel for him, he has been driven from necessity to present his bill with a double aspect.

"This court cannot recognize any such necessity, but holds it to be the duty of the complainant to ascertain his rights, and the means adopted by others to defeat or withhold from him the exercise and enjoyment thereof, before he applies to a court of equity for relief. Then he will be able to present his case with clearness and brevity. If he does not know what are his rights, how is he prepared to say that his rights have been violated? Shall the mere vague belief or suspicion of a complainant, that he has been defrauded or wronged in one of two modes, be the basis of the action of a court of chancery?

"The bill in chancery answers to the declaration in a suit at common law; as at common law, so likewise it is desirable in chancery, that the matters in controversy shall be narrowed down to as few issues as practicable. This rule is not only beneficial to parties litigant, who thereby have an additional guaranty that justice will be afforded, but likewise due to the courts

as it tends to divest causes of much of their complication and embarrassment. The rule should not be lost sight of in endeavoring to carry out another favorite object of a court of equity, the prevention of a multiplicity of suits.

"In Mitford's Chancery Pleading, 181, it is laid down as a general principle that the court will not permit the plaintiff to demand by one bill, several matters of different natures against several defendants, and the reason assigned is that it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings with the state of the several claims of the other defendants, with which he has no connection. The same principle is recognized in the case of Fellows v. Fellows, 4 Cowen, 700; 2 Madd. Ch. 294; 2 Harr. Ch. Pr. 289; 1 East 227.

"In the case of Gaines v. Chew, 2 Howard 642, the court says: 'That a bill which is multifarious may be demurred to for that cause, is a general principle, but what shall constitute multifariousness is a matter about which there is a great diversity of opinion. In general terms a bill is said to be multifarious which seeks to enforce against different individuals, demands which are wholly disconnected.' After quoting from the case of Campbell v. Mackay, 7 Simon 564, where it is said that, 'to lay down any rule, applicable universally, or to say what constitutes multifariousness as an abstract proposition, is, upon the authorities, utterly impossible,' the judge then proceeds to declare that 'every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject.'

"The two grounds of relief sought for in this bill are wholly dissimilar and disconnected. If, as first charged in the bill, the deed is a mortgage, then the defendants should not be forced to prepare themselves to defend against the charge of fraud. And if the trans-

action be a fraudulent one, there will be no necessity of inquiring whether the deed, absolute on its face, was intended by the parties to be a mortgage. Which question shall the court investigate? Or shall the investigation of both proceed at the same time? If so, the proceedings are not only rendered embarrassing and complicated, but the defendants, if acquitted of fraud, will be subject to greater inconvenience and cost than they should be, and for what reason? Not perhaps in consequence of any wrong committed by them, but because the complainant has not taken the trouble to inform himself correctly as to his rights."

And the Kansas City Court of Appeals in a well considered case, Harris v. Wabash Ry. Co., 51 Mo. App. 125, l. c. 127, in discussing this question, said: "The petition in this case, which we have here quoted *in haec verba,* is certainly an instance of very bad pleading, sadly wanting in that 'plain and concise statement of facts constituting a cause of action' demanded by our code of civil procedure. It pretends the statement of one and only one cause of action, and yet comprises within its allegations such a conglomeration or mixture of several causes of action as to well cause confusion in the minds of court and opposing counsel, and becloud the real intention of the pleader who drafted the paper."

Seven Ency. Pl. and Pr. 236, explanatory note: Duplicity (avoiding all confusion) does not exist where "a single demand is sought to be supported by more than one fact, or set of facts, any one of which would be sufficient for that purpose," but does exist (p. 237) where "more than one fact, or set of facts, for the recovery of a single demand, any one of which would justify the recovery." And (note p. 240): "The test is to see whether a single issue can be made to controvert the pleading, by denying any one material fact."

Three Words and Phrases, 2267: "Duplicity is defined to be a joinder of different grounds of action to enforce a single right."

Jamison v. Copher, 35 Mo. 483, and Southworth v. Lamb, 82 Mo. 247, show that matters of contract and tort are so foreign to each other that they cannot be united in the same petition, even in separate counts.

Beattie v. Gerardi, 166 Mo. 156, shows that the joinder of matters not affecting all of the parties is impossible.

Scarritt v. Schmelzer, 110 Mo. App. 413, shows that liquidated and unliquidated claims are so wide apart that they cannot come together in a single case.

The foregoing authorities sufficiently define the words "duplicity" and "multifariousness" to give us a clear insight as to their meaning as used by the Legislature. We will now apply those definitions and the rules of pleading there announced to the facts of the case at bar, and thereby determine whether the various petitions filed in this cause were obnoxious to the rule of duplicity or not.

Counsel for respondents has made a clear, brief and true analysis of the petition which would be difficult to improve upon, and for that reason I here copy the same *in haec verba*.

"Stripped of verbiage, the petition recites (1) that in 1882 Scott made a mortgage upon Scott's land to McLellan, and that at Scott's request, F. G. Altman bought this note from McLellan, (2) upon an alleged agreement between Altman and Scott that Altman would carry the loan for Scott until some indefinite time in the future when the land might enable Altman to get his money and expenses out of the same, with division of any excess between Altman and Scott; (3) that in violation of that agreement, about three months later, Altman foreclosed the deed of trust and bought in the property for himself; (4) that the foreclosure itself was void, because the deed of trust required thirty

days' publication and publication was made only for twenty days; (5) that Altman has spent a lot of money in taxes, etc., the amount of which Scott does not know; (6) that there has been a running account for several years between Scott and Altman which ought to create a balance in Scott's favor; (7) that in 1901 Altman mortgaged the property to Frances Taylor for $6000, by deed of trust to Rosenzweig as trustee, and in 1903 mortgaged the property for a further sum of $5000 to Rose Altman by deed of trust to the same trustee; (8) that at some unstated time Scott deposited with Altman diamonds worth $2200 which Altman has converted to his own use; (9) that at some unstated time Scott performed legal services for Altman (as his attorney) in some unstated matter for which Altman owes him $4300; (10) and scattered through the petition are prayers that Altman account to plaintiff; that Scott be allowed to redeem the land; that the deeds of trust be cancelled; that the diamonds and legal services be brought into the accounting, and that Scott have judgment for the legal services and the diamonds."

From this analysis it will be seen that the petition unites in one count several matters of distinct natures, against several defendants, and several different grounds of action, which cannot be properly united in the same petition, to-wit, matters *ex contractu* and *ex delicto*. Of the former is the claim of right made by plaintiff to redeem from the mortgage assigned to defendant F. G. Altman, and for the recovery of attorney's fees; and of the latter is the conversion of the diamonds mentioned in the petition, and the alleged fraudulent conveyance of the property to Rosenzweig, trustee, to secure $6000, borrowed by defendant F. G. Altman, from defendant Frances Taylor, and $5000 borrowed by him from Rose Altman. It is hornbook law that those distinct causes of action cannot be properly joined in the same petition. [Jamison v.

Copher, 35 Mo. 483; Southworth v. Lamb, 82 Mo. 247.] If joined in the same petition, then the petition is bad for duplicity within the meaning of said section 613. [See' authorities previously cited.] It is equally clear that Frances Taylor and Rose Altman are by no manner of means interested in the causes of action stated, regarding the attorneys's fees alleged to be due from F. G. Altman to plaintiff; or in the diamonds alleged to have been converted by said F. G. Altman.

The joinder of Frances Taylor and Rose Altman with F. G. Altman in the same suit to enforce the several distinct causes of action alleged against each is bad, and also violates the statute which prohibits duplicity. [See Jones v. Paul, supra; Clark v. Covenant Ins. Co., supra; Harris v. Railroad, supra; Cutler v. Cook, 77 Mo. 388; Scarritt v. Schmelzer, 110 Mo. App. 413.]

We are, therefore, clearly of the opinion that the various petitions filed in this cause were duplicitous, and that the circuit court properly struck them out.

The second proposition presented regards the authority of the court to strike out the amended petitions simply for the reason that they were duplicates of the original, which was stricken out for duplicity. Counsel for plaintiff seems to contend that this question is not properly before this court.

We do not concur in that contention, for the reason that all the petitions and motions filed to strike them out are preserved in the record. The motions ask the court to strike out the petitions for two reasons: First, because of duplicity; and, second, because they were duplicates of the original which had been stricken out. The record simply shows that these motions were sustained; and, in the absence of any statement to the contrary, this court must presume that the circuit court sustained the motion for both grounds stated therein. To hold otherwise would almost be equivalent to overruling the motions, for the reason

that there is nothing contained in this record which shows upon which ground they were sustained. We cannot say the ruling of the court was based upon the first ground assigned, and not upon the second, and *vice versa.* Besides that, this court is a court of appeals, and has power only to review matters passed upon, either directly or by necessary implication, by the trial court; and if we do not at least presume that said court passed upon both grounds stated in the motion, then it is self-evident that we have no right or power to review both of them; and if not both of them, which, as before suggested? To my mind, in the absence of a showing to the contrary, as is the case here, there is no escape from the conclusion that we must presume that the trial court passed upon both grounds of the motion.

Recurring then to the question, is it proper practice to file a motion to strike an amended petition from the files for the reason that it is a duplicate of a former petition which has been adjudged bad. This question was touched upon but not decided in an opinion by Judge Lamm in the case of Diener v. Star-Chronicle Publishing Co., 232 Mo. 403. As there stated, it is a novel point. Counsel for neither party have cited any authority bearing upon the proposition, and after a diligent search we have been unable to find any. But looking at the proposition from a common-sense standpoint, I am unable to see any valid objection that can be urged against that practice. If the original petition was bad for duplicity and stricken out for that reason, and if the plaintiff should refile it or a duplicate thereof, why should not that question be considered adjudicated, and the dead and worthless paper be stricken from the file on motion calling the court's attention to that fact? I must confess I am unable to see any good reason for denying that plain and sensible remedy. By this means plaintiff would be barred from filing a duplicate and compelled to file an amended petition ac-

cording to the leave granted by the court; but, if he may persist in filing duplicates, there is no way to stop that useless and dilatory practice short of adjudicating the same question over three times under section 613, and then enter judgment for defendants under section 623, as was done in the case at bar, which took from September 22, 1903, to March 22, 1907, nearly four years, for defendants to have this judgment of dismissal entered under said sections of the statute. The court has the inherent power to compel obedience to its orders and when it gave appellant leave to file an amended petition in the cause, that did not mean leave to refile the one adjudged bad or a duplicate thereof. By such disobedience of the court's order appellant was in default, and the court had the inherent power to so hold and strike from the files the dead petition, and refuse to grant further leave to file an amended petition, as contemplated by said section 613, which requires the court to grant such leave where an amended petition has in fact been filed in pursuance to the court's order, but no such requirement is made of the court where its order is disobeyed by filing a duplicate and not an amended petition. Clearly there should be some shorter mode of bringing such matter to a determination, and at the same time to avoid such vexatious and absolutely useless litigation.

We are, therefore, of the opinion that the court properly struck out the so-called amended petitions, because they were not in fact but in reality duplicates of the original one which was stricken out on motion.

II. It is next insisted by counsel for appellant, that Judge Brumback, the judge who adjudged the first amended petition bad, committed reversible error, for the following reasons:

When the second motion came on for hearing, before Judge Brumback, the same was duly argued and submitted. Subsequently, in passing upon the motion, the judge stated that while the court would pass upon

the motion (the law of which was quite obvious), the court would not hear the main issues in the case, for the reason that the court was prejudiced against the plaintiff, Scott. Thereupon, the court struck out the petition, but gave the plaintiff ten days in which to file an amended petition, and transferred the cause to Judge Park's division of the court.

Appellant neither filed an application for a change of venue from Judge Brumback, nor asked leave to file one on account of his prejudice. Notwithstanding that omission, counsel for appellant strenuously argues that Judge Brumback erred for not granting him a change of venue. Many cases are cited in support of this contention, but upon an examination we find that each and every one of them were based upon formal applications for a change of venue; and they are for that reason not in point. However, two of the very cases counsel for appellant rely upon (Levin v. Railroad, 140 Mo. 630, and Kansas City Belt v. Railroad, 118 Mo. 620) in unequivocal terms hold that although the ruling on an application for a change of venue was erroneous, nevertheless "when defendant appeared to the suit in that (the second) court, its jurisdiction was complete."

While Judge Brumback's conduct may have been sufficient ground upon which to base an application for a change of venue, yet no such application was in fact made. And this court in the case of Eudaley v. Railroad, 186 Mo. 404, said that "the right to a change of venue comes only from the statute. It can be granted by the court only when the party applying brings his case within the scope of the meaning of the statute."

There is no statute which renders a judge feeling or expressing himself as prejudiced against the personality of a litigant, by that act absolutely disqualified to hear any portion of any cause.

There are expressions in a case cited by counsel for

appellant which on the surface seem to lend color to his position; but, when analyzed, even that color is dissipated. That case is Guy v. Railroad, 197 Mo. 174, l. c. 181, and the language referred to is as follows: " 'It would seem that a court against whom so grave a charge as that of partiality is made (however frivolous or false the charge might be deemed) would gladly avail itself of an opportunity to be freed from trying a cause, the trial of which might be connected with such serious imputation.' The conclusiveness of the affidavit of the party making the charge against the judge follows from the very necessity of the case, but that necessity does not exist in reference to the charge of prejudice against the other judges." By reading that case it will be seen that a formal application for a change of venue was filed therein, and, therefore, what was there said related to that application. But, as stated by counsel for respondents, "We fail to see that the expression that under certain circumstances a judge *would gladly free himself* is equivalent to a statement that the judge must free himself, or that the judge is disqualified, or that (where the right of the complainant is purely statutory) a change must be granted in a case not provided for by statute at all."

This insistence is, therefore, decided against the appellant.

Finding no error in the record, the judgment should be and the same is hereby affirmed. *Lamm, P. J., and Valliant* and *Graves, JJ.,* concur, in separate opinion by *Graves, J.*

## SEPARATE CONCURRING OPINION.

GRAVES, J.—I fully concur in the result reached by Judge WOODSON in this case. Further I concur in all that he says therein except the following remarks:

"The record simply shows that these motions were sustained; and, in the absence of any statement to the

contrary, this court must presume that the circuit court sustained the motion for both grounds stated therein. To hold otherwise would almost be equivalent to overruling the motions, for the reason that there is nothing contained in this record which shows upon which ground they were sustained. We cannot say the ruling of the court was based upon the first ground assigned and not upon the second, and *vice versa.*"

These motions were bottomed upon two grounds as stated in the principal opinion. The record entry simply recites that such motions were sustained. But from this it is not presumed that the court sustained the motion upon both grounds. A motion to strike out a petition may contain many grounds, or at least several grounds. If the court finds one ground to be well taken then the motion should be sustained, but because the motion is sustained and record entry made thereof, it raises no presumption that the court had sustained each separate ground of the motion. Of course there might be a presumption that the court had considered all grounds of the motion, but when we consider that under the law it was the duty of the court to sustain the motion if one ground was good, it will not do to say that there is a presumption that the court sustained all of the grounds of the motion. In motions of this character the law does not require the court to point out the ground upon which it is sustained. It is sufficient for the court to say that the motion is sustained, and if there be any one good ground in the motion, the judgment *nisi* will be sustained.

Even considering motions for new trial, where we have a statute requiring the court to designate the ground upon which the motion is sustained, if sustained at all, yet we hold, in cases where the court has failed so to designate, that if there is one good ground in the motion, the action of the court will be sustained here, although the court failed to designate. Not only so,

but if the court does designate, and we find that the ground designated is not a good ground, yet if we further find that in such motion there is a good ground, the action of the court *nisi* will be upheld here.

In the case at bar both grounds of the motion were well taken and the action of the trial court could well be sustained upon either. The objection I have to the portion of the present opinion quoted above is that it announces that we should presume that the court *nisi* had sustained each ground of the motion. In this I think the opinion is in error, but otherwise it is correct.

*Lamm, P. J.,* and *Valliant, J.,* concur in these views.