## GARDNER T. VOORHEES, Appellant, v. LOUISIANA PURCHASE EXPOSITION COMPANY.

### Division One, May 31, 1912.

1. **PLEADING: Three Ameded Petitions: Motion to Strike Out.** Plaintiff will not be turned out of court unless three petitions have been adjudged wholly insufficient. If any be attacked by motion to strike out parts of it, and enough of it remains, after that motion is sustained, to state a cause of action, it is not to be adjudged "insufficient" within the meaning of the statutes (Secs. 1824, 1825 and 1826, R. S. 1909). And if, not counting it, only two have been held insufficient, a third cannot be stricken out unless it fails to state a cause of action. So that where a demurrer was sustained to plaintiff's original petition, and the court sustained a motion to strike out certain portions of his first amended petition and overruled a demurrer to what remained, and plaintiff thereupon voluntarily filed a second amended petition, to which a demurrer was sustained, a motion to strike out a third amended petition and to assess treble costs cannot be sustained unless it fails to state a cause of action; but if it fails to state a cause of action and a demurrer thereto was properly sustained (in other words, if the

original, the second amended and the third amended petitions were wholly insufficient), then a motion to strike out the third amended petition, and to render judgment for defendant, including treble costs, must be sustained.

2. ———: ———: **Prior Petitions Abandoned.** Petitions to which demurrers have been sustained are, by the filing of subsequent amended petitions, considered waived and abandoned; and, in determining the sufficiency and number of such subsequent amended petitions, they are considered properly ruled.

3. ———: **Cause of Action: Contract of Employment: Enhanced Reputation as Consideration: Loss by Abandonment of Plan: Third Petition.** A petition which states that the plaintiff was a refrigerating engineer, and that defendant was a corporation organized for the purpose of holding the World's Fair at St. Louis and for promoting improvements in arts, sciences, industries and manufactures; that, in pursuance to a contract of employment, he submitted to defendant a plan of installing a refrigerating system for said exposition at an estimated cost of $600,000, and agreed to perform services in perfecting such plan that would take him two or three years to complete, at an annual salary of $5000 a year, but agreed to that compensation in consideration of the fact, agreed to by defendant, that his achievements, if accomplished according to the terms of the contract and the plan proposed, would give him a great and valuable reputation throughout the country and probably other countries, which reputation would more than compensate him for the loss of time devoted thereto and taken from his regular business; that defendant, by said contract of employment, reserved the right to alter and change said plan of refrigeration as it might deem proper, and that the agreement was that, if defendant should exercise that right to such an extent as to practically destroy the original plan of refrigeration, defendant was to pay him, in lieu of an annual salary of $5000, five per cent of the estimated cost of the refrigerating system as originally contemplated; that defendant did so change the plans of the refrigeration as to render plaintiff's services no longer needed, and he was in consequence discharged by defendant; and that by reason of such change in the plans much of plaintiff's valuable time was lost from his regular business, and he was prohibited from building up the reputation of a refrigerating engineer which it was agreed he would have done had he been permitted to carry out his part of the agreement, and that by reason thereof he is entitled to recover five per cent of said estimated cost, states a cause of action, and the trial court erred in sustaining a demurrer thereto; and these allegations being stated in a petition filed after only two others had been adjudged insufficient, the court also erred in sustaining a motion to strike it out.

4. ———: ———: **Prolix Pleading: Unusual Contract.** The court will not hesitate to declare null and void a contract so indefinite, uncertain and ambiguous that the court is unable to ascertain from its provisions what its meaning is or what its agreements are; and a petition asking for a recovery on such a contract will be held not to state a cause of action. But a demurrer to the petition will not be sustained simply because it is prolix and inartificially drawn, or because the contract is singular and unusual.

Appeal from St. Louis City Circuit Court.—*Hon. G. H. Williams,* Judge.

REVERSED AND REMANDED.

*Schnurmacher & Rassieur* for appellant.

(1) Under the code, the plaintiff will not be turned out of court unless three petitions have been adjudged wholly insufficient. If any be attacked by motion to strike out parts, and enough remains to state a cause of action, it is not adjudged "insufficient," within the meaning of the statute. Tool Co. v. Spring Co., 122 Mo. App. 603. In the case at bar only two petitions were adjudged wholly insufficient, the first and third petitions filed by the plaintiff; the second, which is designated in the record as the first amended petition, was expressly held good on demurrer, after certain parts thereof had been stricken out on motion of defendant, and plaintiff's third petition, designated in the record as the second amended petition, was voluntarily filed by him. Therefore the court erred in striking plaintiff's third amended petition from the files and the judgment entered should be reversed. (2) If the third amended petition was properly excluded, this court should still review the action of the lower court in sustaining the demurrer to the second amended petition—the last proper petition in the case; if that petition states a cause of action, the lower court erred in sustaining a demurrer thereto, and this court should reverse the case. Tool Co. v. Spring Co., 122 Mo. App.

603; Scott v. Taylor, 231 Mo. 654. (3) The second amended petition states a cause of action.

*Joseph H. Zumbalen* and *Henry T. Ferriss* for respondent.

(1) The court properly ruled that three petitions had been adjudged insufficient and entered judgment accordingly. R. S. 1909, secs. 1824, 1825, 1826; Beardslee v. Morgan, 73 Mo. 22; Sidway v. Land Co., 197 Mo. 359; 163 Mo. 342; 187 Mo. 649; Scott v. Taylor, 231 Mo. 654. (2) Appellant waived the alleged error of the court in sustaining the demurrer to the second amended petition by pleading over and filing a third amended petition. Bobb v. Bobb, 89 Mo. 411; Ross v. Land Co., 162 Mo. 317; Ingerson v. Railroad, 205 Mo. 328; Diener v. Star Chronicle, 232 Mo. 416. (3) The question whether the third amended petition states a cause of action is not properly before this court. (4) Neither the second nor the third amended petition states a cause of action. Beach on Contracts, sec. 72; Lawson on Contracts, sec. 11; 9 Cyc. 248, 249; Lingenfelder v. Brewing Co., 103 Mo. 578; Burks v. Stam, 65 Mo. App. 455; Price v. Atkinson, 117 Mo. App. 52; Price v. Wiesner, 31 L. R. A. (N. S.) 927; VanSlyke v. Ins. Co., 115 Cal. 644; Marble v. Oil Co., 169 Mass. 553; Blakestone v. Bank, 87 Md. 302; Faulkner v. Drug Co., 117 Ia. 120; Leonard v. Carter, 16 Wis. 607; Davie v. Mining Co., 93 Mich. 491; Delashmutt v. Thomas, 45 Md. 140.

WOODSON, J.—This was a suit instituted in the circuit court of the city of St. Louis, on November 23, 1904, by the plaintiff against the defendant, to recover the sum of $25,000 damages or compensation, for an alleged abandonment of a contract for services to be performed by the former for the latter as a refrigerator engineer.

There were four petitions filed in the case; the original, and the first, second and third amended petitions.

The defendant filed a demurrer to the original, which was by the trial court sustained.

The plaintiff then filed the first amended petition, to which plaintiff filed a motion to strike out certain parts thereof, which was by the court sustained. The defendant thereupon filed a demurrer to the remainder of this petition, which was by the court overruled. But nevertheless, plaintiff then voluntarily filed the second amended petition, to which defendant demurred, which was by the court sustained.

Plaintiff then filed the third amended petition, and the defendant filed a motion to strike it out, which was by the court sustained.

The plaintiff then filed a motion for treble damages and judgment, which was also sustained by the court.

In due course and in proper form the plaintiff appealed to this court.

All of the petitions are quite lengthy, each covering some four or five closely printed pages; and for that reason it would unnecessarily elongate the statement of the case to copy all of them. I will, however, copy the third amended petition, and indicate by italics, the principal differences between it and the second amended, viz.: .

"Plaintiff, for his third amended petition, states that the defendant is, and at the times hereinafter stated was, a corporation organized under the laws of Missouri, in accordance with the provisions of article 18 of chapter 12 of the Revised Statutes of Missouri and the acts amendatory thereof, for the purpose of inaugurating and holding an international or World's Fair Centennial Exposition in the State of Missouri, commemorative and in celebration of the centennial anniversary of the Louisiana Purchase, an

historical event in the development of the United States, and for the purpose of promoting improvements in the arts and sciences, professions and trades, by the exhibition of products of the arts, industries and manufactures, and of the soil, mine and sea, and for kindred purposes.

"Plaintiff states that he is by profession an engineer, following the science of mechanical refrigeration as a specialty, and for a number of years has been engaged in the city of Boston and other parts of the United States, in the practice of his profession as a refrigerating, consulting and contracting engineer.

"That heretofore, on or about the 31st day of December, 1902, at the previous request of the defendant corporation, and for a consideration agreed upon and to be paid to him, he submitted to the defendant, for its said Exposition to be held in the city of St. Louis, a report of a representative refrigerating exhibit, to be made up collectively of exhibits of different styles and kinds of refrigerating machines of various manufactures of such machinery and embracing refrigeration as applied to ice-making, cold storage, cooling concessions, cooling of restaurants and cooling of amusement places or theaters; and which report also showed how cooling should be applied and distributed, and the general arrangement of the exhibit as suited to the interests of the Exposition and the interests of the exhibitors of such refrigerating machinery. That the report so submitted embraced suggestions for an exhibit of refrigerating machinery of a capacity of sixteen hundred tons of refrigeration per day. That in accordance with said report, the exhibitors were to install their said machinery at their own cost and expense, and the same was to be operated for the benefit and profit of the defendant, during the World's Fair period; and according to the plan and scope of the exhibit as suggested in said report, the defendant was to furnish the necessary foundations and buildings and

such necessary auxiliaries, apparatus and supplies as could not be secured as exhibits for the purpose aforesaid, and to do certain installation work required in connecting the various machines, at an approximate cost of $150,000, while the machinery and plant so to be constructed and installed were to be of the value of at least $500,000.

"Plaintiff further states that the suggestions contained in said report were, with some modifications, adopted and approved by the defendant corporation, and the defendant agreed to employ the plaintiff as its chief of refrigeration, to secure exhibits and to plan for and superintend the building of such plant, under and pursuant to the following agreement, entered into between them;

"That in view and in consideration of the advantages and benefits which would accrue to plaintiff in the performance of his services in the premises, and the prestige and reputation that he would acquire as a refrigerating engineer, it was agreed between them (plaintiff and defendant) that plaintiff should accept said employment at a salary at the rate of five thousand dollars per annum, payable in equal monthly installments, instead of the usual reasonable compensation for such services, which ordinarily, then was and still is (if the engineer is permitted to devote the necessary time to it to plan the work), five per cent of the cost or value of all materials used and labor required to install said materials (exclusive of the cost or value of the ground upon which the materials are installed); and it was further agreed, *as a further consideration for, and as part of, their said contract of employment,* that in the event the defendant should abandon such exhibit, after plaintiff had devoted the necessary time to it to plan for the same, defendant should pay plaintiff an equitable sum in settlement of his loss and damage, which, it was then and there agreed, should include compen-

sation to plaintiff at the rate of five per cent of the
cost or value of said refrigerating exhibit, *so to be
erected and installed,* in lieu of salary at the rate of
$5000 per annum as aforesaid, and a further sum suf-
ficient to compensate him for the injury which would
result to him in consequence of his profession during
the period while he was in defendant's employ as afore-
said; it being understood by the parties at that time
that plaintiff was then regularly earning about $5000
per annum from his general consulting and contract-
ing practice, and that if plaintiff accepted such em-
ployment his clientage and opportunities for making
such earnings in general practice would become lost to
him, and that several years of labor on his part would
be required to again gain and establish a general prac-
tice, with earnings such as enjoyed by him at the time
the contract with defendant was entered into.

"Plaintiff further states that he accepted such
employment, upon the terms aforesaid, and entered
upon the duties thereof, and devoted to the same the
necessary time to plan for such exhibit and performed
all duties, in so far as the defendant permitted the
same, which were required of him in the performance
of the work which he had undertaken; but plaintiff
states that subsequently, to-wit, on or about the ——
day of January, 1904, the defendant, without plain-
tiff's consent, abandoned altogether the project of hav-
ing such representative refrigerating exhibit, *although
the plaintiff had devoted the necessary time to it to
plan for the same, and the defendant* contracted with
a single manufacturer of refrigerating machines for
a non-competitive exhibit or concession, and by con-
tract gave to the said manufacturer the exclusive right
and concession to sell all ice and refrigeration on the
World's Fair grounds during the World's Fair period,
and the defendant put it out of its power to have any
representative refrigerating exhibit to be constructed
under the plans of plaintiff, as theretofore agreed with

him, and notified him accordingly, but kept the plaintiff in its employ until the 5th day of March, 1904.

"Plaintiff further states that in order to properly perform said duties, plaintiff devoted his time almost exclusively to the business of defendant, and, in consequence thereof, he was taken from the general practice of his profession during the period while he was in defendant's employ as aforesaid, and his clientage and opportunities for earning at least $5000 per annum in his general practice have become lost to him, and several years of labor on his part will be required to again gain and establish a general practice, with earnings such as were enjoyed by him at the time the said contract with defendant was entered into. And plaintiff states that the damages so sustained by him in the several particulars aforesaid amount to at least twenty-five thousand dollars, and defendant has failed and refused to pay the same to plaintiff.

"Wherefore, plaintiff prays judgment against defendant for said sum of twenty-five thousand dollars and for his costs."

The only practical difference that exists between the second and third amended petitions, and the original and first amended, consist of a somewhat fuller statement of some of the terms of the alleged contract, but those differences in no manner change the general character of the cause of action attempted to be stated.

The motion to strike out the third amended petition is in words and figures as follows:

"Now comes the defendant in the above-entitled cause and moves the court to strike from the files herein the third amended petition filed by the plaintiff on December 21, 1908, and for grounds of its motion states the following:

"1. Said third amended petition does not differ in any material manner from the second amended petition filed by the plaintiff herein, said second petition

having heretofore been adjudged insufficient and the defendant's demurrer thereto having been sustained on November 19, 1908; said third amended petition is therefore frivolous, impertinent and in contempt of court, and should therefore be stricken from the files.

"2. Plaintiff has no right to file any pleadings after the defendant's demurrer to the second amended petition was sustained, for the reason that said second amended petition was the third pleading of plaintiff to have been adjudged insufficient, and defendant was thereupon entitled to judgment in its favor on the case and plaintiff became liable for treble costs."

This motion as before stated was sustained; also was the motion to assess treble damages and for judgment.

The judgment rendered upon the latter motion and from which the appeal was taken is as follows:

"Now at this day come the parties hereto by their respective attorneys, and submit to the court the defendant's motion to assess treble costs against plaintiff and for judgment heretofore filed herein, and the court having duly considered the same, and it appearing to the court that the third petition has been adjudged insufficient by this court, it is ordered that said motion be and is hereby sustained.

"Wherefore, it is considered and adjudged by the court that the plaintiff take nothing by his suit in this behalf and that defendant go hence without day; that plaintiff pay treble costs herein and that execution issue therefor."

I. The first insistence of counsel for appellant is stated in the following language, viz.:

"Under the Code, the plaintiff will not be turned out of court unless three petitions have been adjudged wholly insufficient. If any be attacked by motion to strike out parts, and enough remains to state a cause of action, it is not adjudged 'insufficient,' within the meaning of the statute."

In order to have a clear conception of the questions presented for determination, it will be well to keep in mind the statutes governing this matter, which are as follows:

"Sec. 1824. When a petition, answer or reply shall be adjudged insufficient, in whole or in part upon demurrer, or the whole or some part thereof stricken out, on motion, the party may file a further like pleading within such time as the court shall direct; and in default thereof, the court shall proceed with the cause in the same manner as if no such original pleading had been filed. [R. S. 1899, sec. 621.]

"Sec. 1825. If such second petition, answer or reply be filed, and in like manner be adjudged insufficient, or the whole or some part thereof in like manner stricken out, the party filing such second pleading shall pay double costs, and file a like pleading *instanter;* or in default thereof, the court shall proceed with the cause in the same manner as if no second pleading had been filed. [R. S. 1899, sec. 622.]

"Sec. 1826. If a third petition, answer or reply be filed and adjudged insufficient as above, or the whole or some part thereof be stricken out, the party filing such pleading shall pay treble costs; and no further petition, answer or reply shall be filed, but judgment be rendered." [R. S. 1899, sec. 623.]

Counsel for appellant, in support of their insistence, cite and rely upon the case of Roth Tool Co. v. Spring Co., 122 Mo. App. 603.

This case clearly holds that after two petitions had been adjudged insufficient on demurrer, a motion to strike out portions of the third amended petition was sustained, leaving sufficient allegations to constitute a cause of action, the plaintiff had a right to proceed to trial and that it was error to dismiss the cause and assess treble damages under said section 623; and that sections 621, 622 and 623 only apply when the motion or demurrer destroys the entire pleading.

Counsel for respondent do not seem to question the soundness of the foregoing rule announced by the Court of Appeals, and it seems to us that it correctly states the law upon that question.

Evidently the Legislature did not intend for the courts to strike out the pleading entirely, where the remaining allegations of the petition were sufficient to constitute a cause of action, after the demurrer or motion to strike out had been sustained. In our opinion, the design of the Legislature was, that where the demurrer or motion to strike out went to the whole of or to such parts of the petition, which if sustained would destroy the cause of action stated therein, then and only then do said statutes authorize the assessment of treble damages and the rendition of judgment in favor of the moving party.

Counsel for respondent contend, however, that, even though the first amended petition should be eliminated from the case, as contended for by counsel for appellant, nevertheless there still remain three petitions, namely, the original, the second amended and the third amended, which have been adjudged wholly insufficient by the trial court, and consequently, the court properly, under the plain mandate of said sections of the statutes, assessed treble damages against the appellant and rendered judgment in favor of the respondent.

If the three petitions mentioned fail to state facts sufficient to constitute a cause of action, then clearly the court correctly assessed the damages against the plaintiff and rendered judgment in favor of the defendant. That exact question was decided in the case of Scott v. Taylor, 231 Mo. 654, and cases cited.

II. The only remaining question for determination is the correctness of the trial court's ruling in holding the original, first amended and third amended petitions bad.

As regards the original and first amended, it is
sufficient to say that they are not properly before the
court for consideration, for the reason that they were
waived and abandoned by appellant by his pleading
over. [Bobb v. Bobb, 89 Mo. 411; Ross v. Land Co.,
162 Mo. 317; Ingwerson v. Railroad, 205 Mo. 328; Die-
ner v. Star Chronicle, 232 Mo. 416.] We must there-
fore presume that the trial court properly ruled on
those two petitions.

Regarding the third amended, or the last petition
filed: It seems to me that it undertakes to state, that
the appellant made and entered into a contract where-
by he agreed to perform the services mentioned in the
petition, which in the very nature of things would have
taken him two or three years to perform, for and in
consideration of a salary at the rate of $5000 per an-
num, payable monthly in equal installments; and that
it was further agreed that his services were really
worth far more than the $5000 a year, but in consider-
ation of the facts agreed to, that his achievements, if
accomplished according to the terms of the contract,
would have given him a great reputation as a refriger-
ating engineer throughout the United States, and prob-
ably other countries, which fact would have drawn to
him other business of like character, which would more
than have compensated him for the loss of time de-
voted thereto and taken from his regular business; that
the respondent, by said contract, reserved the right to
alter and change said plan of refrigeration as it might
deem proper, and that in case it should exercise that
right to such an extent as to practically destroy the
original plan of refrigeration, then it was the agree-
ment to pay him, in lieu of an annual salary of $5000,
five per cent of the estimated cost of the buildings and
plant, as originally contemplated, which was about
$600,000; that the respondent did so materially change
the plans of the refrigeration as to render appellant's
services as a refrigerating engineer no longer needed,

and was consequently discharged by the respondent; and that by reason of such change of the plans, much of appellant's valuable time was lost from his regular business, and he was prohibited from building up the reputation as a refrigerating engineer, which it was agreed he would have done, had he been permitted to carry out his part of the agreement; and that by reason thereof, it is charged appellant is entitled to recover the five per cent of the estimate cost of the buildings and of the refrigeratian plant, which sum, it was agreed, was a fair and equitable compensation for his loss of time, and failure to build up the reputation mentioned in the contract. In other words it was in effect stipulated damages.

Counsel for respondent insist that this contract is so uncertain, indefinite and ambiguous, that no court or jury can intelligently comprehend its meaning, and it must for that reason be held null and void.

They cite many authorities in support of that legal proposition.

There can, at this late date, be no doubt, but what when a contract is so uncertain or indefinite in its provisions that the court is unable to ascertain therefrom the meaning or the agreement of the parties thereto, then the courts will not hesitate to declare it null and void. This is a sound principle of law, and is predicated upon the idea, that the parties themselves, and not the court, must make their own contracts and agreements.

But does this contract fall under the bane of that wise rule? I think not. Briefly stated it provides that respondent was to receive a salary of $5000 a year for the services he agreed to perform, which was much less than they were actually worth; that if the plans of refrigeration were so changed as to not require his services during the years which it would have taken him to perform, had the original plans been carried out, then his salary of $5000, was to be no longer paid,

but in lieu thereof he was to receive five per cent of the estimated cost, not for the services, which from that time on were never to be performed, but for the loss of time from his business, which it was agreed was worth a sum far in excess of the $5000, which loss, it was thought and agreed, would be compensated by the good reputation he would have built up for himself as a refrigerator engineer, had the plant been constructed as originally contemplated; but by changing the plans, appellant not only lost said valuable time from his business, but was also prevented from building up a national reputation as a refrigerator engineer, which by the terms of the contract, as stated in the petition, were worth to the respondent the said five per cent, or $25,000, in the aggregate, as liquidated damages.

While the petition is somewhat prolix and inartificially drawn, nevertheless, when boiled down to the real heart of the agreement, there remains no ambiguity or uncertainty about it. While it is true, it is a very singular and unusual contract, nevertheless, it is definite and certain in its terms, and can be understood by any ordinary mind.

The unusual character of the contract is a matter to be addressed to the jury, and not to the court. But in passing, we might facetiously add that, if learned counsel have as much difficulty in proving the contract as they had in stating it in the petition they will unquestionably earn their fee.

Viewing the case in the light of the foregoing observations, we are of the opinion that the third amended petition filed states a good cause of action, and was not subject to a successful attack to strike out, for the reason that the first amended petition was not adjudged bad by the circuit court, and as before stated, we are of the opinion that the trial court erred in holding the third amended petition bad.

That leaves only two petitions, the original and

the second amended, which the trial court correctly adjudged insufficient to state a cause of action.

That being true, the sections of the statute previously quoted have no application, for the reason that by the express terms thereof three petitions must first be adjudged bad before the motion will lie.

The judgment is reversed, and the cause is remanded to the circuit court. All concur.