CITY OF DETROIT v. MICHIGAN CENTRAL RAILROAD CO.

156  121
p156  512

1. MUNICIPAL CORPORATIONS — RAILROADS — HIGHWAYS AND STREETS—SEPARATION OF GRADES—DAMAGES.

Where, under the statute (chap. 102, 2 Comp. Laws), damages to property owners occasioned by the change of grades are recoverable only by the owners of such property as abuts upon that portion of the street affected, an agreement by the city with certain railroads to save them harmless from all abuttal damages occasioned by a change of grades, did not contemplate such damages as resulted to owners of property abutting upon the right of way of the railroads and not upon the streets where the improvement was to be made.

2. RAILROADS—CHANGE OF GRADES—DAMAGES—CONTRACTS.

Aside from constitutional or statutory requirements, the relation between manufacturers and railroad companies as to

the construction and maintenance of side tracks rests entirely in contract; and where, in the absence of an express contract, a railroad company constructs a side track to facilitate the handling of the products of a manufacturer, no contract is implied binding either to a continuance of the arrangement, nor is the manufacturer entitled to damages against the railroad company occasioned by reason of changes in the grade of such railroad necessitating a like change in the side track.

3. SAME.

And the fact, that in the interest of the public, certain statutory requirements have been made in regard to securing railroad facilities, does not affect the right of the railroad companies to change the grade of their tracks, nor give the manufacturer damages therefor.

Error to the recorder's court of Detroit; Connolly, J. Submitted January 22, 1909. (Docket Nos. 57, 58.) Decided March 30, 1909.

Petition by the city of Detroit for the separation of grades in a certain street. · The American Car & Foundry Company intervened claiming damages. There was judgment confirming the award of the jury, and both parties bring error. Reversed, and intervener's petition dismissed.

*P. J. M. Hally*, for petitioner.

*Angell, Boynton, Stevens, McMillan & Bodman*, for , intervener American Car & Foundry Co.

This is a proceeding to separate grades at the intersection of Junction avenue with the rights of way with the Michigan Central Railroad Company and other railroads. The act for such separation and the contract between the city and the several roads and the proceedings instituted are identical with those in the case of the separation of such grades in Greenwood avenue, and are sufficiently set forth in an opinion handed down herewith in that case. The American Car & Foundry Company was not

made a party to the original petition, but was permitted to intervene, claiming the right to damages resulting from such separation.

The city contends that the land of the American Car & Foundry Company does not abut upon the street, and therefore is not within the purview of the act. The court held that the company was entitled to intervene and to recover damages. The company claimed damages only for the expense it was compelled to incur in changing its plant and buildings to correspond with the elevation of the railroad so as to preserve its connection with the railroad company. It claims that such actual expenses were conclusively shown to be $25,000. The jury awarded a verdict of $8,500. Both parties appeal—the city because it denies liability, and the company because the verdict did not award its actual damages. The company's land is triangular in shape, bounded on the northwesterly side by the right of way of the Lake Shore & Michigan Southern Railway Company, and on the southerly side by the right of way of the Michigan Central Railroad Company. The nearest point of its land to the side line of Junction avenue is about 100 feet, while from the point where its siding enters the railroad right of way is 208.6 feet. The entrance to its works from the street was from Clark avenue. In order to preserve its side track with the Michigan Central Railroad Company and thus enable it to remove its manufactured cars for shipment, it was compelled to remove one or two of its buildings and to elevate its tracks through its extensive plant, so as to get the proper grade for doing its work and moving out its product.

GRANT, J. (*after stating the facts*). It is determined in the case above referred to that the statute under which those proceedings were taken include damages only to those whose lands abut on the street. Further discussion of this subject therefore is unnecessary. It follows that the contract between the city and the railroad

companies did not contemplate damages resulting to those whose property abuts upon the railroad rights of way, and not upon the streets where the improvements are to be made. This further very plainly appears from the language of the contract, wherein the city assumes the payment of all abuttal damages and to hold the companies discharged from all liability to abutting owners. To hold the city liable for elevating its tracks upon its roadbed abutting the land of the American Car & Foundry Company would be to read into the contract a liability which its terms we think clearly exclude. If there is any liability on the part of the railroad company, it must have been created by contract between the two companies, or by some constitutional or statutory provision. The record contains no evidence of any contract, verbal or written, unless one is to be implied from the mere fact that some time, long ago, a switch track was constructed into the plant of the Car & Foundry Company. In the construction of these switch or side tracks to manufacturing plants, three parties are interested—the manufacturer desiring the most inexpensive way to get his wares to market, the railroad company in obtaining business and profit by transporting such wares, and the public, who consume or use the product of the manufacturer. If the railroad company considers that the transportation of the product of the manufacturer will compensate it and yield it a profit, it usually, upon request, puts in the necessary side track and switches. By the construction of such a track, at the request of one and the assent of the other, no contract is implied binding either to the continuance of such arrangement for any specified time. Clearly the manufacturer has made no contract by which he is liable to the railroad company in damages for discontinuing its shipment at any time or for any reason. He may move his plant within a month after the construction of the side track. He may conclude to ship his goods to market by other railroads or by other routes. I am not aware that any claim was ever made that the

manufacturer is bound by such an arrangement to ship his goods over the one railroad. Neither can a contract be implied on the part of the railroad company to maintain the side track and ship the goods of the manufacturer at a loss or without profit. Neither is a contract implied by which the railroad cannot under its charter raise or depress its tracks for the better management of its road, or for the protection of the public, without paying the manufacturer all damages which may result to him from such act on the part of the road. The railroad company in this case obtained its right of way either by agreement or by condemnation. In either event, it paid to the abutting owners all damages, present and prospective, which could result from the legitimate use of its property. It obtained the right to erect railroad buildings upon its right of way, to cover its right of way with tracks, and to arrange those tracks in such manner as would best conduce to the successful management of its own business and the protection and benefit of the public. It follows that the Car & Foundry Company has no contract with the railroad company for a violation of which it can recover damages. Aside from constitutional or statutory requirements, the relation between manufacturers and railroad companies as to the construction and maintenance of side tracks rests entirely in contract.

But for the interests and rights of the third party interested, the relation between shipper and carrier would rest entirely in the hands of those two parties, and be governed entirely by the contracts which they might choose to make, but the third party, the public, is interested, and therefore has certain rights which it may enforce through the government. Among these is the right to regulate and prescribe, to some extent, the facilities which railroad corporations must furnish for the transportation of the products and produce of the country. Among these is the right to compel switch connections with the plants of manufacturers whenever, as stated by the learned counsel for the Car & Foundry Company, "such connection is rea-

sonably practicable and can be put in with safety, and the manufacturer will furnish sufficient business to warrant it." Hence Act No. 312, Pub. Acts 1907, § 6a, and 34 U. S. Stat. p. 584. But these statutes do not prevent railroad corporations from changing the grade of their tracks or from any other action authorized by their charter, or required for the better protection of the public, nor does it give damages for such action. It does not provide that such side track shall remain as first established, at the will of the manufacturer. Changes therein, after once constructed, are governed by the same principles as govern the original construction. These acts only provide that, if the parties more directly concerned cannot make satisfactory arrangements for such connections, the railroad commissions may be appealed to and the railroad companies compelled to install such tracks upon reasonable terms and conditions, and also maintain them. *Chicago, etc., R. Co.* v. *Suffern*, 129 Ill. 274.

In *New York, etc., R. Co.* v. *Blacker*, 178 Mass. 386, under an act of the legislature, the railroad company was required to elevate its tracks. In doing so it required additional land, and condemned certain land of the respondents adjoining the track. There was a possibility that the spur tracks upon the respondent's land would have to be discontinued. It was held that such possibility was proper to be considered as affecting the market value of the property; but it was held that the respondents could not recover for the cost of removing contents of the buildings, or the cost of removing lumber, or for the disturbance and interruption of business or for waste. We are not, however, dealing with a case where the manufacturer has been deprived of his switching facilities, but with a case where, in consequence of the necessary improvements, he has been put to expense because required to make changes in his plant to meet the new conditions. His switching facilities have not been taken away or interfered with except temporarily. The railroad extends several miles through the city of Detroit, and manufact-

uring establishments are located along its track.   If compelled to pay all damages which such improvements cause to their owners, it would result in a most onerous burden. If any liability attaches to the railroad company for such changes, it could only be under the above statutes to put its switching tracks in proper condition to meet the change. But that question is not here involved.

Judgment reversed, and the petition of the American Car & Foundry Company dismissed.

BLAIR, C. J., MONTGOMERY, MOORE, and McALVAY, JJ., concurred.