## EDWARD J. BRYAN, Appellant, v. LOUISVILLE & NASHVILLE RAILROAD COMPANY.

### Division One, March 14, 1922.

1. **PRACTICE: Pleading Over: Waiver.** Where part of the petition is stricken out on motion of defendant, plaintiff, by pleading over, waives any right to have such action of the trial court reviewed by the appellate court, even though he files a term bill of exceptions seeking to preserve his exceptions to such action of the court.

2. **FRAUD: Misrepresentations: Looking to Future.** To be actionable misrepresentations must be as to existing or past facts and if they merely relate to the future, they do not constitute actionable fraud.

3. **———: ———: ———: Relocation of Railroad.** No cause of action is stated by a petition the salient allegations of which are that the officers and agents of defendant railroad company encouraged plaintiff to make a large investment in lands for orchard purposes by (1) causing defendant to convey to plaintiff large parcels of land then owned by defendant for the purpose of having plaintiff develop same, (2) by sending horticultural agents to instruct plaintiff concerning the best ways of producing and handling fruits, (3) by sending men to aid in harvesting and shipping fruits, (4) by assisting plaintiff in building a switch and by building a railroad station at and for plaintiff's orchards, and (5) by stopping all of defendant's trains at said station; and that thereafter defendant relocated its line of railroad, discontinued operating the same through plaintiff's property and withdrew all railroad service to and from plaintiff's business; and that defendant deceived and defrauded plaintiff in this, that defendant's presi-

dent, vice-president and chief engineer, during all of that time, knew and intended and had determined that said line of railroad would be relocated, but that defendant at no time advised plaintiff of such fact but permitted him to rely upon the continuation of railroad service and to make and develop his investments upon the faith thereof without warning him of defendant's intent and determination or the probability of abandoning its line of railroad, and that because of such deceit and fraudulent conduct plaintiff suffered the damage complained of.

4. **PRACTICE:** **Third Petition Held Insufficient:** **Judgment.** Where the trial court has, on demurrers filed and sustained to successive petitions, held the third amended petition insufficient as not stating facts sufficient to constitute a cause of action against defendant it is proper for the court under Section 1252, Revised Statutes 1919, to render final judgment dismissing plaintiff's suit and for costs.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

AFFIRMED.

*S. Mayner Wallace* and *Shepard Barclay* for appellant.

(1) The italicized allegation, contained in the fourth paragraph of the amended petition, to the effect that the defendant, "in the late summer of the year 1918, took up and removed the tracks of said railroad south from said orchards," should not have been ordered struck out. (2) The amended petition states facts sufficient to constitute a cause of action for fraud, or deceit. The stated facts show that defendant assumed or incurred the obligation of a legal duty toward plaintiff not to entrap or mislead him, as charged, to his pecuniary damage. Suppression of a fact, or silence, when there is a legal duty to disclose, constitutes fraud or deceit. McAdams v. Cates, 24 Mo. 223; Barnard v. Duncan, 38 Mo. 186; Bank v. Crandall, 87 Mo. 211; Morley v. Harrah, 167 Mo. 80; Bradbury v. Smith, 181 S. W. 424; Manter v. Truesdale, 57 Mo. App. 443; 1 Bigelow on Fraud, 467. (3) The

pleaded statutory law of Alabama, where the cause of action arose, serves to make clearer the proper conception of the general law that should be applied.

*H. R. Small* for respondent.

(1) The first assignment that the court erred in sustaining defendant's motion to strike out part of plaintiff's petition was, if error, waived by plaintiff thereafter joining issue on three demurrers to subsequently amended petitions. Sauter v. Leveridge, 103 Mo. 615; Pattison Code Pl. (2 Ed.) secs. 891, 912, 968. (2) The court below did not err in sustaining the demurrer. The petition did not state facts sufficient to constitute a cause of action. Detroit v. Ry. Co., 156 Mich. 121; L. & N. R. Co. v. Mottley, 219 U. S. 467; Kirby v. Railroad, 225 U. S. 155; Foster Lumber Co. v. Railroad, 270 Mo. 629. (3) Bryan v. L. & N. R. Co., 244 Fed. 650, the first suit of this plaintiff against this defendant covering this same situation, and for damages from the same relocation as a suit on the theory that, under all the facts, there was a duty on defendant to pay plaintiff, who relied on a continuance, damages from the relocation, settles the question made by plaintiff in this his second suit, that there is a duty to pay damages. The rule of the first Bryan Case is the rule in Missouri and other states. The duty of location is to the state. Kinnealy v. Ry. Co., 69 Mo. 658; Dewey v. Ry., 142 N. C. 302; Jones v. Newport News, 65 Fed. 736; Edwards v. Lesueur, 132 Mo. 410, 440. (4) The court did not err in rendering judgment on April 30, 1920, after three demurrers had been sustained. R. S. 1919, sec. 1252.

ELDER, J.—This is an appeal from a judgment rendered by the Circuit Court of the City of St. Louis dismissing plaintiff's suit against defendant after the third demurrer filed in the cause had been sustained upon the ground that a third amended petition failed to state facts sufficient to constitute a cause of action. The demurrers

to the first and second amended petitions had been upheld upon the same ground with respect to which the third demurrer was sustained. Prior to sustaining the first demurrer filed, the court had ordered a portion of the first amended petition stricken out. The errors of the trial court urged here are (1) The striking out of part of the first amended petition; (2) The sustaining of the demurrer to the third amended petition; and, (3) The rendering of judgment for defendant on the pleadings. These alleged errors we shall discuss *seriatim*.

Statement.

The action brought was for $350,000 damages alleged to have been sustained by plaintiff as a result of the relocation of a part of defendant's railroad in the State of Alabama. In the brief for plaintiff it is referred to as an action "in tort for deceit." As far as our investigation reveals, a similar case has never been before any of the appellate courts of this State. The principal question presented being as to whether or not plaintiff's third amended petition states a cause of action, we produce the said petition in full. It is as follows:

"Edward J. Bryan, the plaintiff, by his attorneys, says that Louisville and Nashville Railroad Company, the defendant, is and at all times mentioned herein was a railroad corporation, originally incorporated (in 1850) under the laws of Kentucky and thereafter (in 1851) also incorporated under the laws of Tennessee, and that, as such corporation, jointly incorporated under the laws of said two states, it owns and at all said times owned lines of railroad in Kentucky, Tennessee, Alabama and other states, which said lines, including the part there of below specified, at all said times except as herein otherwise alleged, prior to the date (December 26, 1917) when the operation thereof was assumed by the Government of the United States, it operated as a common carrier for hire of freight, express and passengers.

"Plaintiff states that at all times herein referred to he owned and was in possession of a tract of two thousand six hundred acres of land in the County of Blount, State of Alabama, on which lands, beginning in the year 1903,

at great expense of labor, time and money, he grew a large commercial orchard, known as the 'Mont Eyrie Orchards,' of many thousands of trees of the different kinds and varieties of fruits and that until the times herein below stated, a line of defendant's said railroad was located and operated through the same and furnished the only railroad freight, express or passenger service to be had therefor, and upon which service, so supplied by that line of defendant, the successful business operation of said orchards depended entirely.

"Plaintiff states that he began to purchase the various parcels of land (which together comprised said tract) and the planting of said orchards and the making of his investment therein sixteen years ago, and that he at all said times since then continued the development of said orchards and the business operation thereof, including the shipping and selling of fruit on and over said line of railroad, until the time of the defendant's acts herein complained of, all of which was well know to defendant's officers and agents (including its president, Milton H. Smith; its vice-president, W. L. Mapother; its general manager, B. M. Starks; its superintendent, T. E. Brooks; its traffic agent for Alabama, Virgil C. Griffin; its general freight agent, D. M. Goodwyn, and his assistant, C. R. Brent; its land agent, John P. Willoughby; its horticultural agent, T. E. McIlroy; its chief engineer, W. H. Courtenay; its refrigerator car service agent, one Weatherly; and G. A. Park, head of its Immigration and Industrial Department, and L. H. and John Lister, also its agents in said department) who, during all of said while, actively encouraged and assisted plaintiff in making and continuing to make his said investment of time, labor and money in said orchards by causing defendant to convey to plaintiff, on May 26, 1905, in consideration of plaintiff's agreement at the time so to develop the same and thereby produce railroad tonnage for defendant, large parcels of said tract of land which were then owned by defendant, for the purpose of having plaintiff develop the same as stated and, in 1907, by granting to plaintiff

in writing an option to purchase another large parcel of defendant's land for the same purpose and, in 1912, by assisting plaintiff to construct a railroad switch and tramway over which to move the traffic of said orchards between said orchards and defendant's said line of railroad and by building a railroad station at and for said orchards, and stopping all of defendant's trains thereat, and by sending, from time to time, defendant's horticultural and other agents to advise with and instruct plaintiff concerning the best ways and methods of producing and handling fruits and, from season to season, by sending men to aid and assist plaintiff in harvesting and shipping fruits and at all times by giving to plaintiff's orchards prompt and solicitous consideration in the matter of furnishing, from year to year, properly iced cars, quickly placed at and hauled away from said orchards to market and, from year to year, in thus inducing plaintiff to believe in the future of the business of said orchards and in the large reward of financial returns to be expected by plaintiff from his said business; and plaintiff also states that, during all of said time since 1903, defendant collected from plaintiff large sums of money, in freights and other railroad charges, from the operation of said orchards, for the railroad service rendered by defendant in railroad carriage to and from said orchards.

"Plaintiff further states that, beginning in November, 1914, and continuing through the following year, defendant re-located said line of railroad, theretofore so serving said orchards, five miles over mountains away therefrom and for a distance of twenty-two miles along the original location of said line of railroad, and discontinued operating the said line of railroad through plaintiff's said property, and took up and removed the tracks of said railroad north from said orchards *and, in the late summer of the year 1918, took up and removed the tracks of said railroad south from said orchards,* and thereby denied and withdrew all freight, express and passenger railroad service to and from plaintiff's said

business to plaintiff's great damage as herein alleged; that, at the time (1903) plaintiff began the making of his said investment and the planting of said orchards, and continuously at all said times thereafter, until the acts above complained of, defendant deceived and defrauded plaintiff in this that defendant's said President, Vice-President and Chief Engineer, during all of that period of time, well knew and intended and had determined that said line of railroad was to be and would be re-located to a place other than its then location and to plaintiff's damage, and the operation thereof abandoned, by defendant but that defendant at no time advised or warned plaintiff who, at all times, was ignorant thereof, of such fact, and, during all of said period of time, said defendant allowed, permitted and thereby caused plaintiff to rely upon the continuation of said railroad service and to make and to develop his said investment upon the faith of and in the belief in a continuance of such necessary railroad service and facilities by concealing said fact from plaintiff and by failing to advise or warn plaintiff of defendant's said intent and determination or of the probability of said defendant's abandoning said line of railroad, and defendant thereby caused plaintiff to continue the making of his said investment to the amount of $155,000, in money and in eleven years of time and labor and to furnish tonnage to and from said orchards, for defendant's pecuniary benefit, that is, for freight and other charges collected from plaintiff by defendant, because of which deceit and fraudulent conduct plaintiff has sustained and suffered the injury and damage herein complained of. And plaintiff pleads the terms and provisions of certain laws of the State of Alabama, which laws, being at all said times in force and effect, are Sections 2468 of Article 5 and 4299 of Article 90 of the (1907) Civil Code of said State, and provide, respectively, that: 'Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action;' and that: 'Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes

fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case.'

"Plaintiff further states that because of defendant's said deceit and fraud and tortious conduct he has been misled and damaged in the sum of three hundred fifty thousand dollars for that his said business and occupation have now been destroyed by the removal of said line of railroad and the cessation of said railroad service thereon to and from said orchards.

"Wherefore plaintiff prays judgment against defendant for the sum of three hundred fifty thousand dollars, and costs."

I. That portion of the petition which was ordered stricken out has been italicized by us, being the phrase "and, in the late summer of the year 1918, took up and removed the tracks of said railroad south from said orchards," appearing near the beginning of the fourth paragraph of the said petition.

The judgment appealed from is the judgment dismissing plaintiff's suit after the last demurrer had been sustained, and not the order striking out part **Pleading Over: Waiver.** of the first amended petition. It is the issue tendered by this judgment that is before us for review. That the order striking out is not material to the real question presented is admitted by learned counsel for plaintiff, who in their brief say, "Whether the stricken words be deemed part of the petition, or not, appears immaterial to a consideration of the general demurrer."

Notwithstanding, to preserve his exception to the action of the court in thus striking out the portion held objectionable, plaintiff filed a term bill of exceptions which was allowed. However, after the court had ordered said portion stricken out, plaintiff did not stand on his exception and let judgment go against him, but further amended his petition twice and joined issue with de-

fendant upon three successive general demurrers filed. Having so done, we are of the opinion that he waived his right to avail himself of the exception taken. [Fuggle v. Hobbs, 42 Mo. l. c. 541; Gale v. Foss, 47 Mo. 276; Heman v. Glann, 129 Mo. 325; Sauter v. Leveridge, 103 Mo. 615; Waldron v. Merseal, 162 Mo. App. 380.]

The error first assigned is therefore ruled against plaintiff.

II.  In support of their contention that the demurrer to the third amended petition should not have been sustained, learned counsel for plaintiff argue that the facts stated "show that defendant assumed or incurred the obligation of a legal duty toward plaintiff not to entrap or mislead him, as charged, to his pecuniary damage;" that "the circumstances which devolved upon defendant the duty to acquaint plaintiff with the fact, then definitely known by defendant, that defendant would re-

**Demurrer.**  locate, are detailed in the petition," and that the matters charged amount to "an indirect representation" by defendant to plaintiff, "that the catastrophe suffered by him was at least not being considered by it."

Turning to the petition, it will be observed that the salient allegations thereof are that the officers and agents of defendant encouraged plaintiff to make the investment claimed by (1) causing defendant to convey to plaintiff large parcels of land then owned by defendant, for the purpose of having plaintiff develop the same, (2) by sending horticultural agents to instruct plaintiff concerning the best ways of producing and handling fruits, (3) by sending men to aid in harvesting and shipping fruits, (4) by assisting plaintiff in building a switch and by building a railroad station at and for plaintiff's orchards, and (5) by stopping all of defendant's trains at said station; that thereafter defendant relocated its line of railroad, discontinued operating the same through plaintiff's property and withdrew all railroad service to and from plaintiff's business; that defendant deceived

and defrauded plaintiff in this, that defendant's president, vice-president and chief engineer, during all of that time, knew and intended and had determined that said line of railroad would be relocated, but that defendant at no time advised plaintiff of such fact but permitted him to rely upon the continuation of railroad service and to make and develop his investment upon the faith thereof, without warning him of defendant's intent and determination or the probability of abandoning its line of railroad; and that because of such deceit and fraudulent conduct plaintiff suffered the damage complained of.

The gravamen of plaintiff's charge is that defendant by its initial course of conduct and by its subsequent silence lulled plaintiff into believing that defendant's line of railroad would not be relocated and its service would not be discontinued, although such relocation had been determined upon; that relying upon such representation (not specifically made, but only implied by plaintiff), plaintiff made his investment and prosecuted his enterprise; and that when the line was discontinued he sustained the damage claimed. Plaintiff would becloud the issue by insisting that he is not relying upon a representation by defendant that it would continue its railroad, but upon the duty which devolved upon defendant to acquaint him with the fact, known to defendant, that it would in the future relocate its line. This reasoning is not compatible with a proper construction of the purport of the petition. In the final analysis, the true meaning and effect of the allegations as to fraud, contained in the petition, is that by concealment or silence defendant impliedly represented to plaintiff that its line would continue, which representation subsequently proved false. The implied representation might have amounted to a promise of defendant as to indefinite future action but not as to any fact then existing. This being true, under the adjudicated cases in this State defendants' conduct is not actionable. Thus in Younger v. Hoge, 211 Mo. 444, the rule has been laid down, l. c. 455, 456, that " a promise, though made without inten-

tion to fulfill, is not a misrepresentation of an existing fact." Following this case, the St. Louis Court of Appeals in Missouri Loan and Inv. Co. v. Federal Trust Co., 175 Mo. App. 646, l. c. 651, 652, has thus stated the rule: "A representation to amount to fraud must assert a fact or facts as existing, and cannot relate to the future. If it does, it is not fraud, whatever may be the intention of the party or the effect of his statement." As announced in 12 R. C. L. sec. 14, p. 244, the principle is expressed thus: "As a general rule, in order to constitute actionable fraud, a false representation must relate to a matter of fact, and such fact must be one which exists in the present or which has existed in the past."

The circumstances here pleaded would seem to fall within this doctrine.

And, viewing defendant's course of conduct as an implied representation that it would never at any time in the future relocate its line, under the authorities no action for damages exists in favor of plaintiff.

In Kinealy v. Railway Co., 69 Mo. 658, an action by a private citizen to recover damages sustained in the depreciation of his property by the discontinuance of an old route of the railroad company, the doctrine laid down by Mr. Mills in his work on Eminent Domain was quoted with approval, at page 667, such doctrine being stated thus:

"There is no contract with surrounding property owners that a public improvement shall always exist, as at present, and no damages will be allowed for its discontinuance, notwithstanding improvements may have been made on the supposition that they will remain, and notwithstanding property has been thereby enhanced in value."

In Detroit v. Railroad Co., 156 Mich. 121, in dismissing the petition of the American Car & Foundry Company for damages claimed for the expense it was compelled to incur in changing its plant and buildings to correspond with the elevation of the railroad, on change of the grade of a street, so as to preserve its con-

nection with the railroad, in discussing the question of switch tracks the court said, at page 124:

"By the construction of such a track, at the request of one and the assent of the other, no contract is implied binding either to the continuance of such arrangement for any specified time. Clearly the manufacturer has made no contract by which he is liable to the railroad company in damages for discontinuing its shipment at any time or for any reason. He may move his plant within a month after the construction of the side track. He may conclude to ship his goods to market by other railroads or by other routes. I am not aware that any claim was ever made that the manufacturer is bound by such an arrangement to ship his goods over the one railroad. Neither can a contract be implied on the part of the railroad company to maintain the side track and ship the goods of the manufacturer at a loss or without profit. Neither is a contract implied by which the railroad cannot under its charter raise or depress its tracks for the better management of its road, or for the protection of the public, without paying the manufacturer all damages which may result to him from such act on the part of the road."

That defendant had a right to relocate its line plaintiff admits, for, in his reply brief it is said, "Defendant was at liberty to open up a new line of railroad, and free to discontinue operating the old line." But, plaintiff continues, if defendant had, "by a previous course of action, incurred the obligation of a legal duty not to injure plaintiff," then, when such injury occurs, defendant is required to pay therefor. Plaintiff, however, seems to lose sight of the fact that the implied representation of defendant to continue its line did not contemplate a permanent or perpetual continuance.

In Texas and Pacific Railway Co. v. Marshall, 136 U. S. 393, where the City of Marshall agreed to donate to the railway company a large amount of county bonds and sixty-six acres of lands for shops and depots, in consideration of the company's agreement to "perma-

nently establish its eastern terminus and Texas offices at the City of Marshall and establish and construct at said city the machine shops and car works of said railway company,'' and where after the expiration of eight years Marshall ceased to be the eastern terminus and some of the shops were removed, in dismissing an action brought by the city to enforce the agreement the court said, at page 402:

"It seems to us that the real essence of the contract was that the railroad company should, in its process of construction, make this city its eastern terminus, and should establish there its depot, its machine shops and its car works; and that this should be done in the ordinary course of its business, with the purpose that it should be permanent. But it did not amount to a covenant that the company would never cease to make its eastern terminus at Marshall; that it would forever keep up the depot at that place; that it would for all time continue to have its machine shops and car shops there and that whatever might be the changes of time and circumstances, of railroad rivalry and assistance, these things alone should remain forever unchangeable. . . . It appears to us, so far from this, that the contract on the part of the railroad company is satisfied and performed when it establishes and keeps a depot, and sets in operation car works and machine shops, and keeps them going for eight years, and until the interests of the railroad company and the public demand the removal of some or all of these subjects of the contract to some other place. This was the establishment at that point of the things contracted for in the agreement. It was the fair meaning of the words 'permanent establishment,' as there was no intention at the time of removing or abandoning them. The word 'permanent' does not mean forever, or lasting forever, or existing forever.''

In the case at bar the petition on its face shows that defendant's line of railroad and its service was continued from 1903 to 1914, a period of eleven years.

In Texas and Pacific Ry. Co. v. Scott, 77 Fed. 726, where the defendant contracted with the railway company to give it a right of way over his land if the company would establish a depot at a certain point on such land and give defendant and his family free transportation over the road, and where the railroad was built and the depot established and maintained for thirty-six years, at the end of which time the depot was abandoned, upon a suit for damages for the removal of the station agent and operator it was held that no cause of action was shown, the court saying, at page 731:

"It cannot be true that an agreement on the part of a railway company to establish a station at a particular point is an agreement to keep it there forever. It must be that such an agreement is made subject to the general exigencies of business, the public interests, and to the change, modification, and growth of transportation routes, as these may affect the requirements of the railway company's business. The contract having this limitation, we think that the establishment of a railway station, and its maintenance, to the full extent expected or claimed, for thirty-six years, is, under all the circumstances, a substantial and sufficient compliance with the terms of the contract relied on here. So that, viewing this case from either standpoint, assuming the contract to be valid or invalid, we are satisfied that no cause of action is shown against the railway company."

In Jones v. Newport News & M. V. Co., 65 Fed. 736, an action for damages as for the discontinuance of a railroad switch to plaintiff's warehouse, wherein an order sustaining a demurrer to the petition was affirmed, Judge TAFT, speaking for the Circuit Court of Appeals, said, at page 741:

"The petition makes no better case for the plaintiff on the theory of a contract than on a common-law liability. It is not alleged that either the defendant or its predecessor agreed to keep the switch in the main line for any definite time, or that either expressly agreed to keep it there forever. The plaintiff contends that, noth-

ing having been said as to the time, the implication is that the switch was to be maintained at all times, i. e. forever. Such a construction is quite at variance with the views of the Supreme Court, as expressed in Texas & P. Ry. Co. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846.''

After discussing the Marshall Case, heretofore adverted to by us, Judge TAFT continues:

''In the light of this construction of an express agreement to locate and maintain a depot permanently at a town on the line of a railroad, it would seem clear that we should not imply in a contract for a private switch connection a term that it shall be perpetual, and thus forever limit the discretion of the directors to deal with a subject which may seriously affect the convenience or safety of the public in its use of the road.''

In College Arms Hotel Co. v. Railroad, 61 Fla. 553, the doctrine was announced that:

''Persons who own property at a town adjoining a railroad depot, and who, relying upon the continuance of the depot at the place, have improved the property, and have enjoyed special facilities in the conduct of their business incident to such location, have no right, on the ground of special and peculiar injury to their property rights, to enjoin the enforcement of an order of the Railroad Commissioners for the removal of the depot to another point at the town.''

And, in a suit heretofore brought by the plaintiff herein against the present defendant, for the recovery of damages resulting from the abandonment by defendant of its main line of road, reported in 244 Fed. 650, a directed verdict in favor of defendant was upheld, the court saying in part, at page 659:

''The change in the line of road being, as we have found, lawful, and there being no contract for the continuance of the road in its original location, counsel for plaintiff urges in this situation the proposition that a member of the public has such a vested interest in the continuance of a railroad location that he is entitled,

upon its removal, to recover damages either at common law or upon the constitutional guaranty of compensation for property taken for public use. No authority is cited which, in our opinion, sustains the proposition stated, nor have we been able to find any. On the contrary, the rule seems to be established that where there is legislative authority to do an act, omitting for the present cases of the exercise of the power of eminent domain, if in the doing of it harm comes to an individual it is not a wrong for which the law gives a remedy. It is *damnum absque injuris*."

Applying the principles enunciated by the foregoing cases to the petition before us we are convinced that the allegations therein contained are not sufficient to make a case for plaintiff. If the doctrine prevails that silence on the part of the officers or agents of a railroad company can be implied and relied upon to mean that a relocation of its line will never be made, and, if a relocation is made, conformable to a preconceived intention or determination undisclosed to every shipper who might in some way be specially affected thereby, that every such shipper can then maintain an action in damages against the railroad company for fraud or deceit, it is manifest that countenance will have been given to what may prove to be a prolific source of litigation. And such doctrine, if admitted, could well be extended to apply to many public works and utilities, such as the vacation or widening of streets, the abandonment of sewers or water mains, the relocation of gas mains, the removal of public buildings, and the like. Obviously, a rule of such character is not consonant with the policy of the law.

We are of the opinion, and so hold, that the demurrer was properly sustained.

III. Neither argument or citation of authority is advanced by plaintiff in support of his final contention that the court erred in rendering judgment for defendant on the pleadings.

Bryan v. L. & N. Railroad Co.

The additional abstract of record filed by defendant shows that the first demurrer of defendant to plaintiff's first amended petition was sustained on November 3, 1919, that the second demurrer to the second amended petition was sustained on December 22, 1919, and that the third demurrer to the third amended petition was sustained on April 26, 1920. Subsequently, on April 30, 1920, the court rendered the following judgment, to-wit:

"Comes the defendant, by its attorney, and upon its motion, it appearing to the Court that heretofore, to-wit, on the 26th day of April, 1920, the demurrer heretofore filed to the plaintiff's amended petition was by the Court sustained, and it further appearing that the plaintiff has failed since said last-mentioned date to plead further herein, it is ordered that final judgment be rendered on the pleadings in favor of the defendant.

"Wherefore, it is ordered and adjudged by the Court that the plaintiff's cause of action be dismissed at the cost of the plaintiff and the United States Fidelity and Guaranty Company, the surety on the cost bond, for which let execution."

This judgment is authorized by our statute, Section 1252, Revised Statutes 1919.

The action of the court is further upheld by Voorhees v. Exposition Co., 243 Mo. 418; Tapana v. Shaffray, 97 Mo. App. 337; Roth Tool Co. v. Champ Spring Co., 122 Mo. App. 603.

The point made is without merit.

For the reasons appearing herein, we therefore hold that the judgment of the trial court should be affirmed. It is so ordered. All concur: