## Black's Executors and Trustees et al. v. Louisville & Nashville Railroad Company.

(Decided March 1, 1932.)

TUGGLE & TUGGLE for appellants.

THOMAS D. TINSLEY; WOODWARD, HAMILTON & HOBSON; and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The executors, trustees, heirs and widow of John A. Black, instituted this action against the Louisville & Nashville Railroad Company in the Knox circuit court alleging that they are the owners in fee and in the actual use and enjoyment of a line of railroad and all things thereunto appertaining. The line of railroad in question begins at or near the Flat Lick station on the railroad company's line, and runs up Sandy branch a distance of about 7,800 feet to a coal tipple on property owned by plaintiffs. This line of railroad diverges from a side track on the Cumberland Valley division of the defendant's railroad lines. It is further alleged that the railroad company unlawfully and without right so to do, and without the consent of plaintiffs, entered upon their property and removed therefrom all the steel rails forming the track for a distance of about 600 feet from its beginning and intersection with the main tracks of defendant, thereby rendering the track worthless and useless. They prayed for a mandatory injunction to compel the company to restore the railroad tracks to their former status and to reconnect same with the track of defendant.

The railroad company by answer traversed the allegations of the petition, and by second paragraph affirmatively alleged that in August, 1917, it entered into a contract with the Flat Lick Coal Company, under the provisions of which it agreed to and did complete and construct the line of railroad track in question. Under the contract, the coal company did the grading, furnished all ties, paid the cost of laying the tracks and the cost of all materials, except the rails and splices, and agreed to pay to the railroad company 6 per cent per annum on the value of the rails and splices. The contract is set out in full in the answer. It is unnecessary to refer at length to the provisions of the contract, as the only part pertinent to this case is section 5, which reads as follows:

"The said rails and splices and any renewals thereof are and shall remain personal property of the said first party, together with the entire control of same; and the said first party hereby reserves the right, and is fully authorized whenever and at any time it shall desire or deem it necessary, for any

reason whatever, and without let or hindrance from the said second, to take up and remove the rails and splices from said tracks and to take up and remove all other track material from so much of said tracks as is located on said first party's land or original right of way.''

After this contract was executed, John A. Black purchased from the Flat Lick Coal Company a one-half interest in all rights and title secured to that company by virtue of the contract, and assumed one-half of the obligations imposed upon it thereunder. Thereafter the Flat Lick Coal Company was adjudged bankrupt, and its title and interest in the railroad track was sold to John A. Black and the Nu-Coal Company. After this sale by the trustee in bankruptcy, John A. Black died, and the railroad company and his personal representatives made and attached to the contract between the railroad company and the Flat Lick Coal Company a memorandum agreement whereby the Nu-Coal Company and the executors of John A. Black agreed to perform and abide by all the stipulations and conditions of the original contract; and, in consideration of their agreement, the railroad company consented to the assignment and transfer of the contract. It was further alleged in the answer that, after the transfer and assignment of the contract to the personal representatives of John A. Black, it became necessary and expedient for the railroad company's lines extending through Knox county to be double tracked; that, in order to eliminate a grade crossing where the spur track in question connected with the railroad company's lines, it became necessary to tear up that portion of the spur track which was located on the railroad company's right of way. It was further stated in the answer that the company was willing, when the work on its tracks was completed, for the spur line to be reconnected with its lines, provided it was done at the expense of plaintiffs and in such a way as not to interfere with safety in the operation of its trains, and that it had so notified plaintiffs before the institution of this action.

On May 8, 1926, an order was entered reciting that the cause was submitted on plaintiffs' demurrer to the second paragraph of defendant's answer, which demurrer was overruled, and plaintiffs declining to further plead, their petition was dismissed.

Thereafter plaintiffs filed another action alleging that the order was entered out of term and without their knowledge or consent, and asked that so much of the order as recited that they declined to further plead and dismissed their petition be set aside and that they be granted a new trial and be permitted to further prosecute the action. An issue was made, and on a hearing the court set aside the order dismissing plaintiffs' original petition, and gave them permission to further plead. By reply, they completed the issues in the original action and proof was taken. On final hearing, it was adjudged that plaintiffs were not entitled to the relief sought, and their petition was dismissed. From that judgment they have appealed.

When W. C. Black, one of the executors of John A. Black, learned that the railroad company was about to or had disconnected the spur track from its main lines, he wrote it that the executors had no objection to any temporary disconnection that would be an accommodation to the company and did not want to annoy or put it to any expense, and, while willing to co-operate in every way possible, they did not desire to surrender their rights to the use of the track, and asked to be advised as to the intention of the company and how long the track would be disconnected. In reply to that letter, a representative of the railroad company wrote the following letter:

"Your letter of November 9, in reference to connection with the Flat Lick Branch being removed. This connection was broken on November 1, and it is estimated that our construction department will be ready to install a new connection in about ninety days.

"I have handled the question of rental with our management who state that they are agreeable to canceling the rental charge for a period of not exceeding six months."

It is argued in brief for appellant that it was contemplated by the parties that the tracks would be reconnected as soon as the company had completed the work of altering the grade of its road bed, and that without cost to the Black Estate. There is nothing in the record indicating that the railroad company acted arbitrarily or capriciously in this matter. Obviously, it was acting

in the utmost good faith in making the outlay necessary to double track and change the grade of its lines. While the letter from the superintendent of the company to Mr. Black does say that the construction department would be ready to install the connection in about ninety days, there is nothing in it to indicate that the company contemplated making the connection at its own expense or that it in any way waived the obligation imposed upon plaintiffs by the terms of the contract to bear the expense of repair or alteration of the spur line.

It is further argued by appellant's counsel that paragraph 5 of the contract is lacking in mutuality, and therefore void, in that it gives to appellee alone the right to terminate it.

In the case of Queen City Coal Co. v. Louisville & Nashville Railroad Co., 44 S. W. 103, 104, 19 Ky. Law Rep. 1628, the coal company sued the railroad company for damages for disconnecting a spur track leading from its lines to properties of the former. The spur track in that case was constructed under a contract similar to the one under consideration here. The railroad company by answer admitted that it had disconnected plaintiff's lines, but pleaded and relied on the provisions of the contract as giving it the right so to do. One of the provisions of the contract reads as follows:

> "The Louisville & Nashville Railroad reserves the right to disconnect its connection between its said track and said track of Queen City Coal Company . . . ; and said Louisville & Nashville Railroad Company reserves the right to remove the switch frog, and as much of iron as may be located on its land or right of way."

In reply it was alleged that the contract was void and not binding on plaintiff, and could not be pleaded as a bar to its right to recover, because it was contrary to public policy, and in language and form was unconscionable, and that there was no consideration paid for that part of the contract.

The court sustained a demurrer to the reply, and plaintiff offered to file an amended reply, which was refused, and, upon plaintiff's failure to further plead, the action was dismissed.

In affirming the lower court's judgment, this court, in disposing of appellant's contention that the portion of

the contract giving to the railroad company the right to disconnect was without consideration, said:

"It will be seen that neither fraud nor mistake was alleged as to the execution of the contract, but the chief reliance for recovery by appellant seems to be that the authority to disconnect given was without consideration, and against public policy. It will be seen that this contract was executed by appellant company, by the appellant W. M. Howard as general manager, and in that contract the authority to disconnect was specially and fully reserved; and such reservation cannot be held to be without consideration. It seems that the connection remained for about four years, and it is not shown that the appellee acted in bad faith in the matter; nor does it appear that the benefit resulting to appellant from the connection, while it remained, was not ample compensation for the expense incurred by him in making the connection."

The similarity of the quoted provision of the two contracts is at once apparent. They are in substance and effect identical, and, while counsel for appellants challenge the soundness of the decision in that case, no attempt is made to point out any feature that would distinguish it from the case under consideration. No constitutional or statutory regulation or requirement is involved, and, in the absence of any such regulation or requirement, the rights of the respective parties are rested upon, and must be determined by, the provisions of the contract into which they have voluntarily entered. In the absence of any provisions in the charter under which the railroad operates or in the contract between the parties that would forbid it so doing, the railroad may change the grade of its tracks without incurring liability for the expense of making the grade of the spur conform with the changed conditions. City of Detroit v. Michigan Cent. R. Co., 156 Mich. 121, 120 N. W. 592. There is nothing in the contract requiring that the grade of the railroad lines or of the spur should remain the same as when the contract was executed, and there is no escape from the conclusion that any expense incurred in reconnecting and making the spur track conform to the changed grade of appellee's tracks should be borne by appellants.

Judgment affirmed.