William J. GASS, Plaintiff,

v.

NATIONAL CONTAINER CORPORA-TION, a Corporation, and Leonard Moore, Defendants.

Civ. A. No. 2516.

United States District Court
S. D. Illinois, S. D.
March 11, 1959.

Ensel, Martin, Jones & Blanchard, Springfield, Ill., and Bernard Susman, St. Louis, Mo., for plaintiff.

Barber & Barber, Springfield, Ill., for defendants.

POOS, District Judge.

### I.

The plaintiff, William J. Gass, filed a complaint consisting of three counts against National Container Corporation and Leonard Moore, defendants.

The first count charges that the plaintiff had a written contract of employment for a period of five years from September 1, 1952 to August 31, 1957, in which the plaintiff was to perform services as a salesman and sales manager for defendant. The contract had an automatic renewal clause for an additional five years from the termination date or any renewal thereof. This contract could be cancelled by written notice of intention not to renew sent by registered mail at least six months prior to the then termination date.

The plaintiff alleges in Count I that the contract was executed in the City of New York, and to be carried out within the metropolitan St. Louis, Missouri territory, and that the contract was automatically renewed on August 31, 1957, and the obligations thereunder were performed by plaintiff until on or about September 19, 1957, at which time defendants discharged plaintiff in breach of the contract.

The further allegation is that on July 29, 1957, defendants, National Container Corporation and Leonard Moore, a Vice President thereof, desiring to can-

cel said contract and to dispense with the services of plaintiff, falsely and fraudulently represented to plaintiff that it was unnecessary for him to have the security of written contract to work for defendants; that plaintiff would have a job with defendants as long as plaintiff lived and wanted it, and that if he, plaintiff, would cancel and physically surrender his duplicate original of said written contract defendants would then and there simultaneously, with the surrender of the written contract, employ plaintiff, under all the terms and conditions as contained in said written contract, for as long as plaintiff shall live and for so long as defendant, Leonard Moore should be an employee of the defendant, National Container Corporation; that defendant Leonard Moore was an officer and Vice President of defendant corporation and was highly placed in the management and direction of the Corporation; that he was in charge of the entire central division which included the Madison Division where plaintiff was employed, and was the person to whom plaintiff was directly responsible; that plaintiff had a right to believe and rely on the truth of the representations so made by defendant; that plaintiff did believe and rely on the truth of said statements and representations, and so believing did on or about July 29, 1957, in the City of St. Louis, Missouri, cancel said written contract and physically surrender his duplicate original to defendants in accordance with the statements and representations so made to him; that the representations made to plaintiff were false and fraudulent and were known by defendants to be false and fraudulent at the time they were made, and were made by defendants with the intention and purpose of inducing plaintiff to cancel and surrender his written contract, which he did; that plaintiff did not know said statements were false, but believed in them and believed them to be true, and that defendants, after the surrender and on September 17, 1957, orally discharged the plaintiff; that all the statements and representations of defendants were made deliberately, wilfully, intentionally and maliciously.

The complaint prayed judgment for actual damages and punitive damages in the amount of $100,000.00 each.

## II.

Count II of the Complaint alleges for cause of action breach of the contract, the pertinent provisions of which are as follows:

¶1 "The said employer hereby hires the said employee, who hereby accepts such employment, as a salesman within the Metropolitan St. Louis territory, of the corrugated and solid fibre paper products manufactured and dealt in by the said employer, its subsidiaries and affiliates, for the term and period of five (5) years commencing September 1, 1952, and terminating August 31, 1957."

¶4 "(a) For the services to be rendered by the said employee hereunder, the said employer shall pay to the said employee selling commissions calculated at the following rates upon the net amount of all sales personally effected by the said employee, the term 'net sales' being defined herein as the gross amount of all invoices less appropriate deductions for freight, discounts, allowances and bad debts.

On the first $100,000.00 of net sales—
Four Per Cent (4%)
On the second $100,000.00 of net sales—
Three and One-Half Per Cent (3½%)
On the next $200,000.00 of net sales—
Three Per Cent (3%)
And on net sales in excess of $400,000.00—
Two Per Cent (2%)

"(b) In the event that the employee shall be designated as sales manager of the converting plant as

hereinbefore provided, he shall be compensated for such supervisory services at the rate of Five Cents (5¢) per thousand square feet upon all sales made by the sales staff which shall be under his supervision.

"(c) The said employee shall be entitled to a drawing account at the rate of Six Hundred Twenty Five ($625.00) Dollars per month, to be applied against the commissions earned hereunder. In addition thereto, the said Employee shall be entitled to be reimbursed for all reasonable selling expenses actually incurred by him in connection with his activities in behalf of the Employer's business and substantiated by appropriate vouchers, but in no event shall such reimbursable expenses exceed the sum of Four Thousand ($4,000.00) Dollars per annum. Promptly after the end of each month the said Employer shall furnish to the said Employee a statement in writing in reasonable detail setting forth the Employee's commission earnings and the appropriate adjustments for drawing account, and at the same time shall remit to the said Employee such amount as may be due him as indicated on such statement. The Employee shall indicate any objections to such statement promptly after receipt thereof.

"(d) At the termination of this contract or any renewal hereof, said employee shall be entitled to receive commissions, provided not then overdrawn, upon all orders personally secured by him and which were accepted by the said employer prior to the date of such termination, when the same are actually delivered by the employer, but all such orders accepted by the said employer subsequent to the date of such termination, shall be without obligation or other liability to the said employee, and the said employee shall not be entitled to any commissions or other payments with reference thereto."

¶7 "At the termination of this contract or any renewal hereof, the same shall automatically be renewed for additional periods of five (5) years each, unless either party hereto shall give to the other written notice of intention not to renew the same, to be sent by United States Registered mail, return receipt requested, at least six (6) months prior to the then date of termination. Nothing herein contained, however, shall be construed so as to extend this contract for any period beyond the employee's normal retirement date as such term is defined under any Retirement Plan which the Employer may then have in force and effect and which will cover the employee."

### III.

The Third Count charged a breach of the oral contract to employ plaintiff for life, or for as long as Leonard Moore shall be employed by defendant Corporation.

The First Count of the complaint is in tort for fraud and deceit. The defendants move the Court to strike Count I on the grounds that fraud may not be predicated on promises made with a present intention not to perform them, or promises made without an intention of performance.

There are two lines of cases, one line of which announces the majority rule and the other line of which announces the minority rule. The minority rule is that fraud cannot be predicated upon a mere promise, even though it is accompanied by present intention not to perform it. The reasoning of the courts following the minority rule is that even under such circumstances the promise is not a misrepresentation of an existing fact, and that there is a mere unexecuted intention which does not constitute fraud, and that a mere breach of a contract does not amount to a fraud, and that neither a knowledge of inability to perform, nor an intention not to do so would make the transaction fraudulent.

■ This is an action brought in this court either under the law of Illinois or under the law of Missouri. The courts of Illinois, as well as the courts of Missouri, follow the minority rule. The courts of Illinois have had this question before it on several occasions. In the case of Miller v. Sutliff, 241 Ill. 521, 89 N.E. 651, 652, 24 L.R.A.,N.S., 735, the rule is announced as follows:

"In order to constitute fraud in law a representation must be an affirmance of a fact, and not a mere promise or matter of intention. While a statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, it must amount to an assertion of a fact and not an agreement to do something in the future. 2 Pomeroy's Eq.Jur. § 877; 14 Am. & Eng.Ency. of Law, 2d Ed. 47; Kerr on Fraud and Mistake, 88; Day v. Ft. Scott Investment & Improvement Co., 153 Ill. 293, 38 N.E. 567. If a promise is made to do something in the future and at the time it is not intended to perform the promise, that fact does not constitute a fraud in the law. Bigelow on Estoppel, 481; Gage v. Lewis, 68 Ill. 604; People ex rel. Ellis v. Healy, 128 Ill. 9, 20 N.E. 692; Kitson v. Farwell 132 Ill. 327, 23 N.E. 1024; Commercial Mutual Accident Co. v. Bates, 176 Ill. 194, 52 N.E. 49. If an intention not to perform constituted fraud, every transaction might be avoided where the facts justified an inference that a party did not intend to pay the consideration or keep his agreement. A mere breach of a contract does not amount to a fraud, and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent."

The same rule is announced in Grubb v. Milan, 249 Ill. 456, 463, 94 N.E. 927. Both rules are stated in 23 Amer.Jurisp. Sec. 106, page 885, the majority rule and Sec. 109, p. 890, the minority rule, and there is an extensive annotation on this question in 51 A.L.R. 129 which includes a quotation from the Missouri case of Younger v. Hoge, 211 Mo. 444, 111 S.W. 20, 18 L.R.A.,N.S., 94 wherein the A.L.R. citation quotes the following:

"In Younger v. Hoge, 211 Mo. 444, 18 L.R.A.,N.S., 94, 111 S.W. 20, in which the court states that a promise though made without intention to fulfill it, is not a misrepresentation of an existing fact, a promise which it was held would not justify rescission of the contract was made of one as an inducement to him to trade a farm for stock in a corporation, and consisted of an offer of a salaried position in the concern."

■ Thus it can be seen that Missouri follows Illinois on this proposition, and while it may be desirable for a plaintiff to allege and rely upon majority rule as against the minority rule, this court can only enforce the minority rule because it is the law of Illinois, and the law of Missouri as well. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079, 2086.

Further citations of Missouri in support of the minority rule are Reed v. Cooke, 331 Mo. 507, 55 S.W.2d 275; and Bryan v. Louisville and Nashville Railroad, 292 Mo. 535, 238 S.W. 484, 489, 23 A.L.R. 537; see also John T. Brown, Inc., v. Weber Implement Co., Mo., 260 S.W.2d 751; 125 A.L.R. 882 (Annotation).

■ The allegations of the first count of the complaint are not based on the law of either Missouri or Illinois, and accordingly the first count of the complaint is dismissed.

Count Two of the complaint alleges an action of law against The National Container Corporation for breach of contract. The defendant, National Container Corporation, moves to strike from the complaint subparagraphs (b) demanding an accounting, and (c) praying for an order that National Container Corporation keep an account, and this relief is sought on the basis that the plaintiff can recover no more in his suit on the contract than he is entitled to on the

breach of the contract as he is on the date of the trial. Defendant, to this proposition, cites as his authority 35 Amer.Jurisp. Sec. 56, p. 489, and Mt. Hope Cemetery Ass'n v. Weidenmann, 139 Ill. 67, 28 N.E. 834. The rule is announced in the American Jurisprudence citation that "the rule adopted in many jurisdictions, where action is brought to trial before the expiration of the contract period of employment, limits the recovery by employee to damages sustained up to the time of trial. Under this rule the discharged employee is deemed to relinquish his claim for the balance of the term. Even under this rule, however, a wrongfully discharged employee is entitled to damages for wrongful discharge, notwithstanding action is brought and tried before the expiration of the contract period, but his damages are limited to those which accrued up to the time of trial."

■■ In the case of Mt. Hope Cemetery Ass'n v. Weidenmann, 139 Ill. 67, 28 N.E. 834, the respective rules as to the proper damages for a plaintiff on a breach of a contract of the type in the complaint herein alleged were reviewed, the court said this, 139 Ill. at page 79, 28 N.E. at page 836:

"In view of the fact that the servant may die or become incapable of performing before the expiration of the term of his employment, and the uncertainty of the wages or emoluments he may be enabled to earn in the future, we are disposed to follow the rule that the plaintiff shall be limited to his actual loss at the time of trial. It must necessarily be that the actual loss of the plaintiff between the trial and the expiration of the term cannot be definitely determined, and any amount allowed must, from the very nature of things, be largely speculative. By the adoption of the rule limiting recovery to the day of trial all difficulty would be avoided in the assessment of his damages. There is no hardship in this, for, as we have seen, if he desires so to do he may lie by until the expiration of the term. It is clear that the servant wrongfully discharged is not entitled, as a matter of law, to recover the full amount of the contract price, even after the expiration of the term, if he has earned other wages, or received other compensations for his time and labor after the breach of the contract. All such sums as he has earned or might by reasonable diligence have earned, must be deducted, and, if he has earned more than the price agreed to be paid, his recovery would be limited to nominal damages merely. It is apparent that it is impossible to tell whether, from the day of trial to the expiration of the term he will earn more or less than the contract price. The plaintiff can recover only his actual loss."

This has been followed by the courts of Illinois, and when the question was last raised in the Appellate Court for the First District in the case of Corby v. Seventy-One Hundred Jeffery Ave. Bldg. Corp., 325 Ill.App. 442, at page 457, 60 N.E.2d 236, the rule announced in the Mt. Hope Cemetery Ass'n v. Weidenmann was followed.

■ It is up to this court to enforce the procedural law of Illinois and accordingly there will be stricken from the prayer the portions thereof designated on page 6 of the complaint by striking therefrom subparagraphs (b) and (c).

■ The Rules of Civil Procedure rule 26 et seq., 28 U.S.C.A. give to the plaintiff every opportunity to take depositions for the purposes of discovery, and plaintiff has every opportunity under these rules to find out what his damages are, if any, under the theory advanced in subparagraphs (b) and (c).

As to Count 3, the defendant, National Container Corporation, moves to strike this count on the ground that it fails to state a cause of action and bases its

motion on the fact that there is no allegation in this count of any authority on the part of the Vice President to bind the Corporation. The allegations of the complaint are that Leonard Moore is a Vice President of defendant, National Container Corporation; that on or about the 30th day of July, 1957, plaintiff was an employee of defendant, National Container Corporation, under terms of a written contract having five years and one month remaining in said contract, and which contract was to expire on August 31, 1962; that on or about the 30th day of July, 1957, in consideration of plaintiff surrendering the aforesaid written contract to defendant, National Container Corporation, plaintiff and defendant, National Container Corporation, contracted and agreed by, in and through the defendant, Leonard Moore, a Vice President, agent and servant of defendant, National Container Corporation, that defendant, National Container Corporation employ plaintiff as a sales manager, and plaintiff became an employee of defendant, National Container Corporation, as a sales manager; that the term of said contract was for so long as plaintiff should live, and for so long as defendant, Leonard Moore, should be an employee of defendant, National Container Corporation; that said contract was an oral contract and provided that defendant, National Container Corporation, was to pay plaintiff a drawing account of $1,200.00 per month in any event during the term of said contract, plus a commission of 4% on the first $100,000.00 of plaintiff's sales for defendant, National Container Corporation, 3½% on the second $100,000.00 of such sales, 3% on the next $200,000.00, and 2% on all such sales over $400,000.00, plus expenses not to exceed $4,000.00 per year, and plus 5¢ per 1000 sq. ft. of box board used in carton boxes sold by all other salesmen for defendant, National Container Corporation, in the Madison Division, all such commissions to be paid on such sales per month; that said contract was made in the City of St. Louis, Missouri; that all parties entered upon the performance of said contract and all parties performed their obligations thereunder, until on or about September 19, 1957, when defendants discharged plaintiff without regard to the said contract, and in breach thereof; that plaintiff is still alive, that said Leonard Moore is still an employee of defendant, National Container Corporation; that plaintiff on and subsequent to September 19, 1957, and to this date stood and stands ready, willing and able to continue his employment with defendant, National Container Corporation, under said contract and in accordance with its terms for so long as he shall live, and so long as the defendant, Leonard Moore, shall be an employee of defendant, National Container Corporation. That plaintiff has demanded compensation from defendant, National Container Corporation, as provided in said contract from September 19, 1957, to date, but defendant, National Container Corporation, has refused to pay plaintiff same or any part thereof.

It is readily discernible from reading the allegations of the complaint that the contract as alleged was made by Vice President of National Container Corporation; there is no allegation that the defendant was employed for this length of time by any action on the part of the directors of the Corporation, nor is there any allegation binding on the Corporation to show otherwise.

It is to be kept in mind that we are not dealing with William J. Gass as an individual laborer employee, nor are we dealing with a case of a common laborer employee who was injured while in the employ of a Corporation, nor are we dealing with a person who gave up a lifetime job to accept employment with National Container Corporation. We are dealing with a situation where the contract that was given up was only one for an employment period of five additional years. All that the Corporation received from the allegations of the complaint was that the Corporation would be relieved only of a promise to employ him for a period of fixed number of years in considera-

448

tion of which all that the employee would be performing would be services for which he expected to be paid. In all the cases where lifetime employment has been sustained there was additional consideration other than the performance of services by him such as release of substantial claims for damages against the employer by reason of personal injuries or where the employee gave up a job of lifetime employment. In other words, the courts have sometimes sustained a contract of life employment where the person was injured in the employ of a Corporation and gave up his rights to a substantial settlement, i. e., cases of common laborers and not cases of employees of the status of the plaintiff in this case.

The question has been before the courts of other states, but as far as I am able to determine, has never been before the courts of Illinois. There is a substantial annotation on this question in 28 A.L.R.2d 929, and on pages 940 and 941 are found a particular analysis of the authority of a president of the corporation, the vice-president of a corporation, the treasurer of a corporation, and the secretary of a corporation, in so far as this type of employment is concerned. The great weight of authority holds that the president, the vice-president, the treasurer or a secretary of a corporation do not have implied authority to enter into a contract to employ an employee for life.

■ Count 3 of the complaint, lacking the allegation that the employee was engaged pursuant to a resolution of the Board of Directors, in my opinion, fails to state a cause of action. The cases that hold this are the following: Chesapeake & Potomac Telephone Co. v. Murray, 198 Md. 526, 84 A.2d 870; Carney v. New York Life Ins., 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471; Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa 1249, 37 N. W.2d 316; Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Seiss v. McClintic-Marshall Corp., 324 Pa. 201, 188 A. 109; Horvath v. Sheridan Wyoming Coal Co., 58 Wyo. 211, 131 P.2d 315.

These were all cases of a President of a Corporation entering into the employment. In the cases of a Vice President entering into the employment contract, and which hold that the employment contract is invalid are: Lewis v. Minnesota Mutual Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316; Starr v. Superheater Co., 7 Cir., 102 F.2d 170.

Accordingly the motion to strike Count 3 of the Complaint is sustained.